[Crim. No. 5759. In Bank. Feb. 3, 1956.]

THE PEOPLE, Respondent, v. ERNEST BLODGETT [DON WILLIAMS], Appellant.

Benjamin F. Marlowe for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Chief Assistant Attorney General, and Victor Griffith, Deputy Attorney General, for Respondent.

TRAYNOR, J.—Defendant was found guilty by a jury of one count of possessing marijuana in violation of Health and Safety Code, section 11500. His motions for probation and for a new trial were denied, and he was sentenced to serve three months in the county jail. He appeals from the judgment and the order denying his motion for a new trial.

At approximately 8 p. m. on August 4, 1954, Nowlin Sanders and Mrs. Jacqueline Grundy met defendant on the street near the Willow Hotel at 7th and Willow in Oakland. Sanders had known defendant for about three months. The three went into the restroom of the hotel where they stayed for five or ten minutes. Defendant gave Sanders $10 to make some kind of purchase. Sanders left the hotel, made the purchase, and returned, and the three spent another ten minutes in the restroom. They then visited a friend in another hotel, and after they left and were walking on the street defendant told Mrs. Grundy and Sanders that he had bought five "joints of pot" i.e., marijuana. Defendant and Sanders shared a marijuana cigarette, and the parties separated. At approximately 3 a. m. the following morning Mrs. Grundy and Sanders were together at the Willow Hotel. Sanders left to get a cab, found one at a taxi stand a block away, got in the front seat and asked the driver to drive to the hotel. The cab double parked in front of the hotel

and Sanders went in. Shortly thereafter Mrs. Grundy came out of the hotel, got in the cab, and sat on the right side of the rear seat. At about the same time defendant approached the cab and told the driver that he wished to go to 12th and Broadway. The driver told him that if his other fare was going in the same direction, he could go along. Defendant then entered the cab and sat on the left side of the rear seat. In the meantime, Officers Barker and Tarabochia of the Oakland Police Department had been observing the cab as it stood in front of the hotel and decided to investigate it. They approached and ordered the occupants to get out. As Officer Barker opened the left rear door he saw defendant withdraw his left hand from behind the seat at the juncture of the seat and back cushion. After defendant and Mrs. Grundy got out, the officer removed the rear seat and found three marijuana cigarettes where defendant had withdrawn his hand. The driver testified that earlier in the evening he had to clean out the back of his cab because a passenger had been ill. He had taken the seat out and at that time there were no cigarettes in the back of the cab. No one had been in the back seat thereafter until Mrs. Grundy and defendant sat there. After the officers had ordered Mrs. Grundy and defendant out of the cab, Sanders came out of the hotel. The officers then asked the cab driver to take all of them to the police station. Sanders asked defendant why they were being arrested and defendant replied that the police had found some ''pot.'' Defendant told the interviewing officer at the police station that at the time he was ordered out of the cab he had his left hand in his pocket and took it out to push back on the seat to raise himself. He stated that he had not smoked marijuana for about a year. At the trial he denied having smoked marijuana with Sanders and denied placing the marijuana cigarettes in the cab. Mrs. Grundy, Sanders, and the driver also denied placing the cigarettes in the cab.

Defendant contends that the search of the cab was unlawful and. that the evidence obtained thereby was therefore inadmissible. The search was made without a warrant. ■ Although the cab driver could have been arrested for double parking, the search of his cab cannot be justified on that ground, for it had no relation to the traffic violation and would not have been incidental to an arrest therefor. (*Cf.* *People* v. *Gorg,* 45 Cal.2d 776 [291 P.2d 469]; *Elliott* v. *State,* 173 Tenn. 203 [116 S.W.2d 1009, 1012-1013]; *United*

*States* v. *Lefkowitz,* 285 U.S. 452 [52 S.Ct. 420, 76 L.Ed. 877, 82 A.L.R. 775].) ■ It was justified, however, on another ground. There is nothing unreasonable in an officer's questioning persons outdoors at night. (*People* v. *Simon,* 45 Cal.2d 645, 650-651 [290 P.2d 531]; *Gisske* v. *Sanders,* 9 Cal.App. 13, 16-17 [98 P. 43]), and in view of the hour and the unusual conduct of the occupants of the cab it was not unreasonable for the officers to order them to get out of the cab for questioning. ■ Since Officer Barker saw defendant's furtive action in getting out, he had reasonable grounds to believe that he was hiding contraband and the search of the cab was therefore reasonable. (*Carrol* v. *United States,* 267 U.S. 132, 149 [45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790]; *Husty* v. *United States,* 282 U.S. 694, 701 [51 S.Ct. 240, 75 L.Ed. 629, 74 A.L.R. 1407]; *Scher* v. *United States,* 305 U.S. 251, 255 [59 S.Ct. 174, 83 L.Ed. 151]; *Brinegar* v. *United States,* 338 U.S. 160, 165-171 [69 S.Ct. 1302, 93 L.Ed. 1879]; *United States* v. *One 1946 Plymouth Sedan Automobile,* 167 F.2d 3, 7.)

■ Defendant also contends that he did not have a fair trial because of misconduct of the prosecuting attorney in attempting to suggest to the jury that defendant had taken heroin the evening before his arrest.

During his opening statement the prosecuting attorney told the jury that defendant, Sanders and Mrs. Grundy had gone into the restroom of the Willow Hotel, and that while there had "talked about the purchasing of some heroin." Upon defendant's objection the prosecuting attorney told the court that he was merely stating what he expected to prove and that he would not prove it if the court ruled the matter out. He was instructed to proceed. He then stated that defendant had given Sanders a $10 bill, that Sanders departed and returned a few minutes later with something in his hand, and that the three had "stayed in there for fifteen or twenty minutes and then departed."

Mrs. Grundy testified as a witness for the People. On direct examination, in answer to the question "And what did you do while you were in the restroom at the Willow Hotel," she said, "He [Sanders] put a paper which was believed to be heroin——" Defendant objected and the matter was taken up in chambers. The court ruled that testimony concerning the conduct of the parties in the restroom was admissible solely to show their relationship, but struck from the record the reference to heroin as "immaterial and as a

volunteer statement and not responsive.'' A later objection was also sustained when, upon cross-examination, defendant was asked, ''And you know the effects [of heroin] because you yourself have been the recipient of a shot?'' It was immaterial to the one-count charge of possession of marijuana whether or not defendant had taken heroin the evening preceding his arrest (see *People* v. *Perez*, 128 Cal. App.2d 750, 756 [276 P.2d 72] ; *cf. People* v. *Le Beau*, 39 Cal. 2d 146, 148 [245 P.2d 302]), and the trial court therefore properly sustained these objections.

 No further direct reference was made to heroin, but Mrs. Grundy and Sanders were questioned in detail concerning the activities of the three in the restroom. During the questioning it was brought out that they had partaken of Sanders' purchase. It is apparent from the repeated references to the restroom and the conduct therein that the purpose of the questions was to keep constantly before the jury the suggestion in the opening statement that could not properly be proved. (*Cf. People* v. *Mullings*, 83 Cal. 138, 145-146 [23 P. 229, 17 Am.St.Rep. 223].) A careful review of the entire record convinces us, however, that this misconduct did not result in a miscarriage of justice. (Cal. Const., art. VI, § 4½.)

The judgment and order are affirmed.

Gibson, C. J., Shenk, J., Schauer, J., Spence, J., and McComb, J., concurred.

CARTER, J.—I dissent.

I cannot agree that the sight of a cab parked in front of a hotel in the early hours of the morning is sufficient to constitute reasonable cause for a police investigation. The law, as set forth in *People* v. *Simon*, 45 Cal.2d 645, 648 [290 P.2d 531], is that ''. . . the search of defendant's person may be justified only if he was committing or attempting to commit an offense in the officer's presence (Pen. Code, § 836, subd. 1), or the officer had reasonable cause to believe he had committed a felony. (Pen. Code, § 836, subd. 5.)'' Just how it can be said that two people getting into a cab early in the morning is ''unusual conduct'' is not entirely clear to me. I had thought that it was a frequent occurrence.

''Under these circumstances, to permit an officer to justify a search on the ground that he 'didn't feel' that a person on the street at night had any lawful business there would

expose anyone to having his person searched by any suspicious officer no matter how unfounded the suspicions were. Innocent people, going to or from evening jobs or entertainment, or walking for exercise or enjoyment, would suffer along with the occasional criminal who would be turned up." (Mr. Justice Traynor, speaking for the court, in *People* v. *Simon, supra,* at pp. 650, 651.) If the sight of two people getting into a taxicab in front of a hotel early in the morning constitutes reasonable cause to believe that a felony is being committed, then any couple out for an evening of entertainment may be subjected to police surveillance and search. This, in the words of Mr. Justice Jackson (*United States* v. *Di Re,* 332 U.S. 581, 595 [68 S.Ct. 222, 92 L.Ed. 210], is a "greater danger to a free people than the escape of some criminals from punishment."

It would appear that the salutary rule of *People* v. *Cahan,* 44 Cal.2d 434 [282 P.2d 905], is to be circumscribed by an unlimited and unwarranted extension of the concept of what constitutes reasonable cause. In *People* v. *Martin, ante,* p. 106 [293 P.2d 52], the sight of two men parked in an automobile at night was held to constitute reasonable cause for a police investigation and warrant a search of their persons and automobile; here, the sight of a man and woman getting in a cab in front of a hotel in the early hours of the morning is held to constitute reasonable cause for police investigation and a search of their persons and the taxicab. It is no answer that the search showed illegal possession of narcotics since the search may not be justified because it, in fact, shows that the defendant was guilty of a felony. (*People* v. *Brown,* 45 Cal.2d 640 [290 P.2d 528]; *People* v. *Simon,* 45 Cal.2d 645 [290 P.2d 531].)

In the majority opinion it is stated that Officer Barker had reasonable grounds to believe that defendant was hiding contraband because of his "furtive action" in getting out of the cab for questioning. In *Carroll* v. *United States,* 267 U.S. 132, 160 [45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790], the court very carefully and at length set forth the evidence and noted that the officers had known of the bootlegging activities of the defendants for two months prior to the search and seizure; in *Husty* v. *United States,* 282 U.S. 694 [51 S.Ct. 240, 75 L.Ed. 629, 74 A.L.R. 1407], the officer had received prior, reliable information that Husty was carrying contraband; in *Brinegar* v. *United States,* 338 U.S. 160 [69 S.Ct. 1302, 93 L.Ed. 1879], the officer conducting the search

had arrested the defendant some five months prior to the search for carrying liquor and had seen him on at least two occasions in the six months preceding the search loading liquor in his car which, on the day in question, appeared to be heavily loaded with what the defendant admitted to be liquor; in *United States* v. *One 1946 Plymouth Sedan Automobile,* 167 F.2d 3, the officer had received advance reliable information that the defendant would make delivery of tax unpaid alcohol in a certain vicinity. It may therefore be seen that all of the cases relied upon by the majority are easily distinguishable from the one here under consideration in that in all of them the facts showed *some basis* for suspecting that a crime was being committed.

I also disagree vehemently with the statement in the majority opinion that "there is nothing unreasonable in an officer's questioning persons outdoors at night." Cited in support of this statement are *People* v. *Simon,* 45 Cal.2d 645 [290 P.2d 531], and *Gisske* v. *Sanders,* 9 Cal.App. 13 [98 P. 43], neither of which supports the statement as it is here set forth.

Because the search was conducted without reasonable cause to believe on the part of the officers that a felony was being committed, the evidence procured thereby was illegally obtained and inadmissible under the rule set forth in *People* v. *Cahan,* 44 Cal.2d 434 [282 P.2d 905].)

I would therefore reverse the judgment.