[Crim. No. 7709. Second Dist., Div. Three. Dec. 22, 1961.]

THE PEOPLE, Plaintiff and Respondent, v. REFUGIO SANCHEZ ANGUIANO, Defendant and Appellant.

Ellery E. Cuff, Public Defender, Richard W. Erskine and James L. McCormick, Deputy Public Defenders, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and A. Douglas MacRae, Deputy Attorney General, for Plaintiff and Respondent.

VALLÉE, J.—In a nonjury trial defendant was convicted of driving a vehicle upon a highway while addicted to the use of narcotic drugs. (Veh. Code, § 23105.) He was sentenced to state prison. He appeals from the judgment.

About 11:15 a. m. on November 8, 1960, Deputy Sheriff Burke, on routine patrol, saw defendant driving a new 1961 Pontiac easterly on Florence Avenue in Los Angeles County. Phillip Perry was sitting to the right of defendant. The car had a temporary license plate on the back. Burke testified: "It struck me funny, his youth, his companion's youth." He took defendant to be "16, 17, 18." Burke followed the Pontiac through three or four intersections. At every intersection defendant came "almost" to a complete stop. He put his hand

out as "a slow motion, that he was slowing down." The speed limit in the area was 25 miles an hour. Defendant drove between 10 and 15 miles an hour. He made a left turn into Crockett Street, going very slowly.

Burke "pulled" defendant over with his red lights "to check out the vehicle and the occupants." Burke testified his reason for "pulling" defendant over was, "I did not believe that he was in possession of the vehicle lawfully. . . . I pulled him over because I thought it was a possible grand theft automobile. Q. And that was because of the combination of his apparent youthfulness and the fact he was in a new fairly expensive automobile, is that correct? A. His youth, and his driving habits, the manner that he was driving the automobile. Q. Now, you have indicated here that he was, number one, driving slowly, perhaps 10 to 15 miles an hour; and, two, that in going down this side street he pulled almost to a complete stop at each intersection, is that correct, sir? A. That is correct, sir."

After defendant stopped Burke asked him if it was his car and to produce his driver's license. Defendant said it was not his car and he did not have a driver's license. Perry produced a driver's license and said the car was his. Burke told defendant and Perry to be seated in the car, Perry behind the wheel and defendant on the passenger side.

Burke returned to his car and radioed the sheriff's department for a check of possible outstanding warrants. He learned there were four or five charges against defendant relating to different violations of the Vehicle Code. He then informed defendant of this fact, placed him under arrest, took him to a sheriff's substation, and booked him. Perry was told "he was free to go."

Burke did not have a warrant of any kind.

At the substation Burke asked defendant to roll up his sleeves, which he did. Defendant had "quite a few tracks or snakes, puncture wounds on the left inner arm." "Tracks or snakes" is terminology used by addicts. Defendant "stated that he had been a user, that he had his last fix a week ago, that his companion did not know anything about this whatsoever, was not aware that he was using."

Burke then went back to the Pontiac "because of the condition of the defendant." He opened the door on the passenger side. As he did so, a bundle wrapped in a paper napkin or towel fell out. "The bundle contained an eye dropper, a spoon that had been broken off at the end with black on the bottom

of the spoon, a hypodermic needle, a rubber finger protector, one that you slip over your finger, and a piece of match cover which the needle was wrapped in. It was rolled around the needle."

Deputy Sheriff Goodwin, an expert on narcotics and narcotic addicts, testified the paraphernalia found in the bundle that fell out of the car was used by narcotic addicts to inject heroin into the arm. About 2 p. m. on November 8, 1960, he examined defendant's arms. On defendant's right inner elbow was a tattoo of a girl's face. Within the tattoo directly over a vein was a "build-up" of scar tissue. Within the scar were six recent puncture wounds, made within an interval of about two weeks. On the back side of the right forearm were tracks about 2 inches long over veins. In one track were six recent puncture wounds and in another, seven. All bore scab formations. On the left wrist was a circular scratched or burned area immediately over a vein with four puncture wounds with scabs. Defendant's eyes were extremely pinpointed. Goodwin was of the opinion defendant was addicted to the use of heroin.

Defendant told Goodwin and Deputy Sheriff Barr he had "fixed" last about five days previously. He said he had injected half a "cap"; he had been using several half "caps" daily for about two months.

Defendant testified he was 23 years old; he did not have any recent puncture marks when the officers examined his arms, only old scars from tissue; he did not tell them he had "fixed" about five days before the arrest; he told them the last time he used narcotics was in February 1960; the "outfit" found in the Pontiac was not his; he did not know how it got in the car.

The assignment of error is that the evidence as to the addiction of defendant was obtained through an illegal search and seizure, and the court committed prejudicial error in admitting evidence of his addiction. Proper objections and motions to strike were made. The objections were overruled and the motions denied.

We think the officer had a sufficient basis on which to stop the Pontiac and question defendant, the driver. Defendant was not arrested at that point; he was merely detained for the purpose and during the time of making reasonable inquiries. Such a detention does not, in and of itself amount to an arrest. (*People* v. *Amos*, 190 Cal.App.2d 384, 388 [11 Cal.Rptr. 834].) The existence of facts constituting probable cause to justify an arrest is not a condition precedent

to such an investigation. (*People* v. *Ellsworth,* 190 Cal.App. 2d 844, 847 [12 Cal.Rptr. 433].)

The fact that defendant did not have a driver's license clearly indicated a violation of Vehicle Code, section 12500, to Burke. He then learned by radio there were four or five outstanding warrants for defendant's arrest for traffic violations. It was at this point he placed defendant under arrest. The arrest was justified and lawful. (Pen. Code, § 842. *Cf., People* v. *Simpson,* 170 Cal.App.2d 524 [339 P.2d 156].)

A peace officer may, without a warrant, arrest a person whenever he has reasonable cause to believe the person to be arrested has committed a public offense in his presence. (Pen. Code, § 836.)

The examination of defendant's arms and the search of the Pontiac were lawful. A search incident to a lawful arrest extends to the person and an automobile that he is driving without a license. (*People* v. *Dewson,* 150 Cal.App.2d 119, 130 [310 P.2d 162].)

We hold that evidence as to the addiction of defendant was not obtained through an illegal search and seizure, and the court did not err in admitting evidence of such addiction.

Affirmed.

Shinn, P. J., and Ford, J., concurred.