[Crim. No. 7955.   Second Dist., Div. Three.   May 22, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. ERNEST CALVIO ALCALA, Defendant and Appellant.

16

Ernest Calvio Alcala, in pro. per., and Lionel Richman, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and A. Wallace Tashima, Deputy Attorney General, for Plaintiff and Respondent.

FORD, J.—The appellant Alcala and four other men were accused by an information of the crime of robbery. (Pen. Code, § 211.) In a second count they were charged with the crime of assault by means of force likely to produce great bodily injury. (Pen. Code, § 245.) The charges against one defendant, Joseph Garcia, were dismissed. In a trial by jury the appellant Alcala and defendant Figueroa were found guilty of robbery in the first degree and of the offense charged in the second count. (Cf. *In re Chapman*, 43 Cal.2d 385, 389-390 [273 P.2d 817].) Defendants Lozano and Murillo were acquitted.

The appeal of Alcala is from the judgment and from the denial of his motion for a new trial.[1] The sole issue presented

---

[1] In the notice of appeal, the appellant states that he appeals from "the decision of the court . . . and judgment and sentence of the court rendered thereon . . . and from the denial of the defendant's motion for a new trial." The judgment in a criminal case is the sentence, "sentence" being another term for "judgment" under such circum-

is whether certain evidence should have been excluded on the ground that it was illegally obtained.

Jose Martinez testified that at about 2 o'clock in the morning of February 10, 1961, he left Shorty's Café on San Fernando Road and entered his automobile which was on the adjoining parking lot. The appellant Alcala opened the door of the witness' vehicle and put a gun against his body and told him to give him all his money. Alcala took Martinez' wallet out of his pocket. The wallet contained $153, Martinez' driver's license and his social security card. Alcala then said, "Now." Martinez felt a hand on his neck. He received six or seven blows to his head and face from a heavy object. He could not identify any participant other than Alcala.

Gabriel Guardado testified that he saw Martinez after he had been wounded and at about the same time he saw two men run "at a fast step" toward an automobile and enter it. The car was then driven from the parking lot onto San Fernando Road. The automobile was black in color and had "primer spots" on it.

Police Officer Benny F. Garcia testified that he and Officer McClelland were proceeding in a police car on San Fernando Road in the vicinity of Shorty's Café at about 2 o'clock a. m. on February 10, 1961. Officer Garcia was familiar with the area of Shorty's Café and knew that intoxicating beverages were served there. He saw a vehicle, the lights of which were not turned on, leave the parking lot at a speed of about 20 to 25 miles an hour. He further testified as follows: "The vehicle slowed slightly at San Fernando Road, turned on its lights and proceeded across the highway . . . and went north-bound." When the automobile went across San Fernando Road to the side for northbound traffic, the police car was about 30 feet from it. The officers, who were going in a southerly direction, turned their car around and followed the vehicle for about 200 to 250 feet on San Fernando Road. The driver then made a right-hand turn onto Pierce Street. The officers thereafter stopped the other vehicle.

In the absence of the jury, testimony was given by Officer Garcia as to the reasons which led the officers to stop the automobile. He testified that when the lights of

stances. (*People* v. *Carlson,* 177 Cal.App.2d 201, 207 [2 Cal.Rptr. 117]; *People* v. *Perkins,* 147 Cal.App.2d 793, 797-798 [305 P.2d 932]; *People* v. *Tokich,* 128 Cal.App.2d 515, 519 [275 P.2d 816].) Since there is no appeal from the "decision" of the court, such attempted appeal must be dismissed. (*People* v. *Dills,* 171 Cal.App.2d 256, 261 [340 P.2d 273].)

the police car illuminated the vehicle which was crossing the road, he saw that it was being driven by the defendant Lozano whom he had known because of "traffic violations . . . running a signal at one occasion, and also after talking to him on several occasions when he had been drinking." When he saw Lozano drive the automobile from the area of the café, he "thought that he was possibly under the influence of alcohol."

After the vehicle had stopped, Officer Garcia went over to it. As to his observations, he testified as follows: "I looked into the car and I noticed the defendant Danny Figueroa sitting on the right-hand side of the driver, and on his arms I noticed these scar lines on his forearm that looked like narcotic addiction scar marks . . . . The defendant Alcala had blood on his hand, seemed to have lacerations on his knuckles. . . . I had seen Figueroa on several occasions. . . . I remember that he was known as a narcotics user. . . . I took their identification, the ones that had it, and had them step out of the car." On cross-examination, the officer testified that he followed the automobile about six blocks before it was stopped. While it did not swerve, the speed was reduced, after it turned onto Pierce Street, from about 30 miles an hour "to about 20, 25 miles an hour." Because of such reduction in speed it "seemed" to the officer that the driver was "under the influence." He further testified that he had never arrested Lozano for drunk driving and he saw no "driving violations" while he was following Lozano's car except that Lozano came into the highway without stopping. He caused Lozano to stop because it seemed to him that he was under the influence of alcohol and he "wanted to check him out." As to the basis for his state of mind, the officer testified: "Well, the coming out without lights from a darkened area. The area in there is dark enough so that you should use lights coming out. And hitting the edge of the sidewalk or midway between there and turning on his lights and coming into the highway without stopping, was an indication to me that either he was under the influence or—or he wasn't caring which way he was driving." After the automobile came onto San Fernando Road, the officer saw no "moving violations." The marks he saw on Figueroa's arm were not fresh.

On the basis of the evidence heretofore stated, the trial court determined that the officers were justified in stopping the automobile. Thereafter, Officer Garcia gave further testimony in the presence of the jury. The car which he caused to

stop was black in color and "the front part was primered." Defendant Figueroa was seated next to the driver, Lozano. In the rear seat were Alcala, Murillo and Joseph Garcia. The officer ordered the men to get out of the vehicle. Then "a cursory search" of the clothing of Figueroa, Lozano and Alcala for weapons was made. In one of Figueroa's pockets he "felt a roll which appeared to be money." He found no money on the person of Alcala. He noticed blood on Alcala's hand, which appeared to be running either "from inside the palm of the hand or in between the fingers." When the officer turned his attention to one of the other men, Figueroa ran across the street into a housing project. Other police units were called by radio and arrived upon the scene. The vehicle was searched by Officer Matheny, who arrived after the flight of Figueroa.

Officer Matheny testified that he found a wallet under the rear seat of the vehicle when he searched it. It contained the social security card of Mr. Martinez. Thereafter, Mr. Martinez arrived at the place where the car had been stopped and identified the appellant Alcala as his assailant.

It is the appellant's contention that the action of the officers in stopping the automobile in which he was riding was illegal. He asserts that such illegality permeated the further acts of the officers and that the evidence thereafter obtained was inadmissible. With respect to a similar contention, it was said in *People* v. *Ellsworth,* 190 Cal.App.2d 844 [12 Cal.Rptr. 433] at pages 846-847: " 'Whether an officer has a right to stop a car and interrogate the occupant is an issue quite separate from whether he has a right to stop the car and to arrest the occupant and conduct a search.' (*People* v. *King,* 175 Cal. App.2d 386, 390 [346 P.2d 235]; *People* v. *Gale,* 46 Cal.2d 253, 257 [294 P.2d 13].)

"The courts of this state consistently have adhered to the proposition that a police officer may question a person outdoors at night when the circumstances are such as would indicate to a reasonable man in like position that such a course is necessary in the discharge of his duties [citations] . . . . The right to interrogate, under the circumstances noted, includes the right to stop the automobile in which the person to be interrogated is riding. [Citations.] Such a procedure does not constitute an arrest even though the person interrogated may be detained momentarily [citations], and the existence of facts constituting probable cause to justify an arrest is not a condition precedent to such an investigation.

*(People* v. *Blodgett, supra,* 46 Cal.2d 114, 117 [293 P.2d 57].) In support of his position the defendant cites a number of cases stating the general rule that a police officer may legally stop and search an automobile only when he has reasonable cause to believe that an offense is being committed. (*Carroll* v. *United States,* 267 U.S. 132 [45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790] ; *Olmstead* v. *United States,* 277 U.S. 438 [48 S.Ct. 564, 72 L.Ed. 944, 66 A.L.R. 376] ; *Wirin* v. *Horrall,* 85 Cal.App.2d 497 [193 P.2d 470].) These cases do not apply to the situation at hand, where the stopping occurred as an incident to a lawful investigation . . . .''

It is true that the facts which were held to be sufficient to justify the stopping of the car in the *Ellsworth* case appear to have been stronger than in the case presently before this court.[2] ▮▮▮ But each case must be judged in the light of the factual situation presented to the officer. (See *People* v. *Evans,* 175 Cal.App.2d 274, 276 [345 P.2d 947].) Whether there was a violation of the principle that the citizen shall not be subjected to unreasonable treatment at the hands of the agents of society must be resolved by the trial court in the light of all the facts which bear upon the question of the existence of a reasonable basis for the officer's judgment which must be formed without undue delay and without the benefit of long meditation.

▮▮▮ Officer Garcia could not be expected to disregard completely his knowledge of Lozano's past conduct when in the course of duty he observed his actions on the occasion in question. (See *People* v. *Hollins,* 173 Cal.App.2d 88, 93 [343 P.2d 174].) In view of the officer's knowledge of such past conduct and his observation of the manner in which Lozano, at approximately 2 o'clock a. m., drove in front of the police car from a parking lot adjacent to a café where intoxicating beverages were dispensed, it cannot be said that the circumstances were insufficient to indicate to the officer as a reasonable man that stopping the automobile to question the driver was necessary in the discharge of his duties. (See *People* v. *Anguiano,* 198 Cal.App.2d 426, 429 [18 Cal.Rptr. 132] ; *People* v. *Porter,* 196 Cal.App.2d 684, 686 [16 Cal.Rptr. 886].)

---

[2]The court summarizes the facts in the *Ellsworth* case as follows (190 Cal.App.2d, at p. 847): ''The defendant's automobile was parked on a secluded roadway in the night time; when the officers came onto this roadway the defendant started his car and proceeded to drive away; the officers gave chase; showing a red light and sounding a siren; the defendant, after going three-quarters of a block, stopped, alighted from his automobile, and met the officers at the rear thereof.''

When the vehicle was stopped, Officer Garcia observed marks on Figueroa's arm which appeared to be old marks indicating a past use of narcotics. He also saw the bloody condition of Alcala's hand. In view of the number of men in the automobile and the hour of the night, the officers were justified, for their own protection, in directing the occupants to alight from the vehicle and in making a determination as to whether any of them were armed before pursuing further inquiry. (*People* v. *Martin,* 46 Cal.2d 106, 108 [293 P.2d 52]; *People* v. *Davis,* 188 Cal.App.2d 718, 722 [10 Cal. Rptr. 610]; *People* v. *One 1958 Chevrolet,* 179 Cal.App.2d 604, 611 [4 Cal.Rptr. 128].)

While there does not appear to have been any basis for the search of the automobile prior to the flight of Figueroa, such sudden flight was sufficient to give rise to a reasonable inference on the part of the officers that he was guilty of some crime. (See *People* v. *Martin, supra,* 46 Cal.2d 106, 108; *People* v. *Taylor,* 174 Cal.App.2d 448, 451 [344 P.2d 837].) Under such circumstances the search of the automobile by Officer Matheny was justified. (See *People* v. *Garnett,* 148 Cal.App.2d 280, 283 [306 P.2d 571].) Even if the search disclosed evidence of a different crime from that suspected at the time the search was undertaken, that fact did not bar the use of the evidence found. (*People* v. *Galceran,* 178 Cal.App.2d 312, 317 [2 Cal.Rptr. 901].) Since the search and seizure was reasonable, the evidence which was uncovered was admissible. (*People* v. *Taylor, supra,* 174 Cal.App.2d 448, 452.)

The appellant received a fair trial and there is no error upon which to predicate a reversal of the judgment.

The attempted appeal from the "decision" is dismissed. The judgment and order denying the motion for a new trial are affirmed.

Shinn, P. J., and Files, J., concurred.

A petition for a rehearing was denied June 19, 1962, and appellant's petition for a hearing by the Supreme Court was denied July 18, 1962.