[Crim. No. 12477. Second Dist., Div. One. Dec. 6, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. GILBERT PEDRO SANCHEZ, Defendant and Appellant.

Frederic Steinberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and George J. Roth, Deputy Attorney General, for Plaintiff and Respondent.

LILLIE, J.—Defendant, charged with possession of heroin for sale (§ 11500.5, Health & Saf. Code), was found guilty of a lesser but necessarily included offense, possession of heroin (§ 11500, Health & Saf. Code). He appeals from the judgment.

Federal Narcotic Agents Borquez and Restow had information that the intersection of Brooklyn and Breed in Los Angeles was a "hot" corner and a "hangout for a lot of people using narcotics"; in the vicinity is a pedestrian tunnel running beneath Brooklyn with entrances north and south. Several months before August 20, 1965, defendant had been pointed out to Borquez as a dope peddler; about a week before, the agent saw defendant go into the tunnel two or three times with different persons, remain a few minutes and come out the same side he had entered—he did not go through the tunnel. On August 20, around 4:45 p.m., the agents saw de-

fendant twice enter the tunnel with various individuals, remain there for a few minutes, then exit the same side through which he entered. About the third time, one agent entered the tunnel from the north and the other from the south; they walked up to defendant and another man who were having a conversation. The agent testified that the purpose for entering the tunnel was "to talk to this man and see what he was doing"; because of defendant's clothing and physical appearance it was his opinion that he was a narcotic user. He approached defendant, exhibited his badge and announced, "Federal Narcotics"; defendant, who had a piece of watermelon in his left hand and a spoon in his right, immediately pushed the spoon into the watermelon and with his right hand quickly reached into his pocket. The agent testified, "He [defendant] quickly reached into his pocket with his right hand; and I didn't know if he was going for a gun or what. So I grabbed his hand. Around the wrist I grabbed him," as defendant had his hand pulled part way out of his pocket. He took a box from defendant's hand and observed that he was sweating and appeared to be "high." A search of defendant revealed a loaded .25 automatic in his belt. Examining the box and believing that the capsules therein contained heroin, the agents arrested defendant; he told them he was "high." The box contained 50 capsules of heroin.

Defendant testified that he entered the tunnel to cool off and eat his watermelon; the other man was not a narcotic addict and they were just talking. He admitted he was under the addiction of heroin and that the heroin in his possession was for his own use and not for sale and that he used 7 to 8 grams a day, amounting to between 70 and 80 caps. He denied being down in the tunnel prior to that occasion.

Appellant's main contention, that the arrest, search and seizure were unlawful, is predicated on the theory that "the confinement" in which he was placed by the officers approaching him from either end of the tunnel constituted the arrest and that it was without probable cause.

There is nothing improper about an officer stopping a motorist or a pedestrian on the streets or in public places for questioning when to a reasonable person such a course of conduct appears necessary to the discharge of his duty (*People* v. *McGlory*, 226 Cal.App.2d 762, 765 [38 Cal.Rptr. 373]; *People* v. *Alcala*, 204 Cal.App.2d 15, 20 [22 Cal.Rptr. 31]; *People* v. *Martin*, 46 Cal.2d 106, 108 [293 P.2d 52]; *People* v. *Blodgett*, 46 Cal.2d 114, 117 [293 P.2d 57]; *People* v. *Michael*, 45 Cal.2d

751, 754 [290 P.2d 852]); and circumstances short of probable cause to make an arrest may justify such action. (*People* v. *Mickelson*, 59 Cal.2d 448, 450 [30 Cal.Rptr. 18, 380 P.2d 658].)

 The agents had information that defendant was a dope peddler, at a prior time they had observed defendant's suspicious activities in connection with the tunnel, they knew the nature of the area, from defendant's appearance and conduct they were of the opinion that defendant was a narcotic user, and they had just watched his unusual activities in connection with the tunnel; thus, as reasonable persons, the agents were warranted in their decision to enter the tunnel for the purpose of investigating defendant's suspicious conduct and talking to him to find out what he was doing. They had the right to walk up to him in a public place in the manner in which they did, exhibit their badges and identify themselves. Temporary detention for questioning is proper (*People* v. *Mickelson*, 59 Cal.2d 448, 452 [30 Cal.Rptr. 18, 380 P.2d 658]), and whether it was reasonable for that purpose is a question of fact for the trial court. (*People* v. *One 1960 Cadillac Coupe*, 62 Cal.2d 92, 95-96 [41 Cal.Rptr. 290, 396 P.2d 706]; *People* v. *Alcala*, 204 Cal.App.2d 15, 20 [22 Cal. Rptr. 31].) The trial judge's finding that there was reasonable cause for detention and questioning is substantially supported by the record.

 When Borquez identified himself, he saw defendant move quickly—plunge the spoon into the watermelon and reach into his pocket. As defendant started to pull his hand out of his pocket, the agent, believing he might be ''going for a gun,'' grabbed him around the wrist. This warranted the agent in taking precautionary measures to assure his own safety and seize the hand in which he had reason to believe might be a concealed weapon (*People* v. *Martin*, 46 Cal.2d 106, 108 [293 P.2d 52]; *People* v. *Blodgett*, 46 Cal.2d 114, 117 [293 P.2d 57]; *People* v. *McGlory*, 226 Cal.App.2d 762, 765 [38 Cal.Rptr. 373]; *People* v. *Cove*, 228 Cal.App.2d 466, 469 [39 Cal.Rptr. 535]; *People* v. *Alvarado*, 250 Cal.App.2d 584, 589 [58 Cal.Rptr. 822]; *People* v. *Garrett*, 238 Cal. App.2d 324, 327 [47 Cal.Rptr. 731]; *People* v. *Martines*, 228 Cal.App.2d 245, 247 [39 Cal.Rptr. 526]) even though defendant's hand yielded a box instead of a gun. The right to investigate gives rise to the right to conduct a reasonable search for weapons (the same revealed the gun, an automatic pistol, in his belt) or pursue a course of action necessary to assure

704

protection (as here, seizing defendant's wrist). ▮ The defendant's physical appearance, sweating, "high" condition, unusual conduct and suspicious action, together with all of the facts known to the agents prior to entering the tunnel, support their reasonable belief that the box found in defendant's hand contained contraband (*People* v. *Blodgett,* 46 Cal. 2d 114, 117 [293 P.2d 57]; *People* v. *Currier,* 232 Cal.App.2d 103, 107 [42 Cal.Rptr. 562]); and if a search for weapons or a course of action necessary to protect the safety of the agents reveals contraband, they are not required to ignore it. (*People* v. *Garrett,* 238 Cal.App.2d 324, 327 [47 Cal.Rptr. 731].) Defendant having been found with heroin in his possession, the agent had the duty to arrest him. "Should the investigation then reveal probable cause to make an arrest, the officer may arrest the suspect and conduct a reasonable incidental search. [Citations.]" (*People* v. *Mickelson,* 59 Cal.2d 448, 450-451 [30 Cal.Rptr. 18, 380 P.2d 658]; *People* v. *Lopez,* 60 Cal.2d 223, 241 [32 Cal.Rptr. 424, 384 P.2d 16].)

▮ Finally, appellant argues that the evidence obtained by the federal agents would not have been permissible in a federal prosecution, thus it should not have been received in a state court. The argument is based on his claim that the agents acted on information supplied by unreliable informants, suspicion and conjecture and without probable cause, and that the heroin was seized as a result of their unlawful activity. While provisions of the Fourth Amendment to the United States Constitution apply to the states through the Fourteenth Amendment (*Mapp* v. *Ohio,* 367 U.S. 643 [6 L.Ed. 2d 1081, 81 S.Ct. 1684, 84 A.L.R.2d 933]), it is clear from the evidence here that even though the federal agents had no warrant they properly arrested defendant having observed him in the act of committing, and having reasonable cause to believe him to have committed, a felony. "Reasonable grounds" under the federal law is synonymous with "probable cause" in California law. (*Ker* v. *California,* 374 U.S. 23 [10 L.Ed.2d 726, 83 S.Ct. 1623]; *Teasley* v. *United States,* 292 F.2d 460, 465; *Redmon* v. *United States,* 355 F.2d 407. 411.) Further, until the agents seized defendant's hand and found the box, they had only the intention of conducting a routine inquiry; defendant was not arrested until after the box was discovered and the agent observed defendant sweating and "high." For federal purposes, the question when the arrest took place is governed by California law. (*United States* v. *Di Re,* 332 U.S. 581, 589 [92 L.Ed. 210, 217, 68 S.Ct. 222].)

There can be no legitimate issue created by the fact that an examination of the box was made to determine its contents prior to arrest, for all of the facts known to the agents before entering the tunnel together with defendant's suspicious conduct in the tunnel and his appearance, gave them, once they realized that a box, not a gun, was in his hand, reasonable cause to believe that it contained contraband. A search may precede an arrest as long as the search is supported by evidence sufficient to constitute probable cause apart from that discovered by the search. (*People* v. *Simon,* 45 Cal.2d 645, 648 [290 P.2d 531].) Under similar circumstances, the federal law' is the same. (*Dickey* v. *United States* (9th Cir. 1964) 332 F.2d 773, 778.) Having already found that the evidence establishes probable cause, we find nothing in either California or federal law to militate against the validity of the arrest.

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied January 4, 1968.