[Civ. No. 26694. First Dist., Div. Four. Jan. 16, 1970.]

WILLIAM WILSON CORNFORTH, Plaintiff and Respondent, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Appellant.

**COUNSEL**

Thomas C. Lynch, Attorney General, and Victor D. Sonenberg, Deputy Attorney General, for Defendant and Appellant.

Newman, Marsh & Furtado and Manuel L. Furtado for Plaintiff and Respondent.

**OPINION**

**DEVINE, P. J.**—This is a driver's license suspension case. The trial court granted a peremptory writ of mandate directing appellant to set aside its order of suspension.

It is not questioned that respondent was driving while drunk; he pleaded guilty. It is not contended by respondent that he was in any way misled by the officers procedure; he was given proper admonitions. He informed the officer that he had consumed about seven Martinis. He failed field sobriety tests. Respondent's sole point is that the officer should not have stopped him.

Respondent was driving his automobile in the slow lane of Mission Boulevard in Hayward at midnight on August 3, 1967. Officer Nelson, on routine patrol, observed respondent driving at a speed five miles below the posted speed limit of 35 miles per hour and at least 10 miles slower than the normal flow of traffic, which was light at the time. While following respondent's vehicle for about three blocks, the officer saw respondent's car weaving from side to side and swerving to clear cars parked at the curb, which he narrowly missed. In light of his observations, the officer testified, he had reasonable grounds to believe that the driver of the vehicle was intoxicated, and accordingly he activated the red lights and siren on his patrol car and

brought respondent's car to a stop. There was nothing in the area except closed businesses, open fields and a small plot for horses, and although respondent testified that he was looking for a motel, this intention would not appear to the officer as he observed the moving vehicle.

■ It is a well recognized rule in California that an officer may stop a motorist or pedestrian for questioning under circumstances short of probable cause for an arrest. (*People* v. *Mickelson,* 59 Cal.2d 448, 450 [30 Cal.Rptr. 18, 380 P.2d 658]; *People* v. *Collins* *(Cal.App.) 80 Cal.Rptr. 310; *People* v. *Villafuerte,* 275 Cal.App.2d 531, 533 [80 Cal.Rptr. 279]; *People* v. *Brown,* 271 Cal.App.2d 391, 394-395 [76 Cal.Rptr. 568]; *People* v. *Stephenson,* 268 Cal.App.2d 908, 910 [74 Cal.Rptr. 504]; *People* v. *Manis,* 268 Cal.App.2d 653, 658 [74 Cal.Rptr. 423]; *People* v. *Beal,* 268 Cal.App.2d 481, 484 [73 Cal.Rptr. 787]; *People* v. *Cruppi,* 265 Cal.App. 2d 9, 11 [71 Cal.Rptr. 42]; *People* v. *Henze,* 253 Cal.App.2d 986, 988 [61 Cal.Rptr. 545]; *People* v. *Perez,* 243 Cal.App.2d 528, 531 [52 Cal. Rptr. 514].) ■ The generally accepted criterion for determining the validity of a temporary stopping for investigation is whether the circumstances would have indicated to a reasonable man in like position that an investigation was necessary to a proper discharge of the officer's duties. (*People* v. *Gibson,* 220 Cal.App.2d 15, 20 [33 Cal.Rptr. 775]; *Williams* v. *Superior Court,* 274 Cal.App.2d 709, 711 [79 Cal.Rptr. 489]; *People* v. *Perez, supra,* at p. 531; *People* v. *Collins, supra; People* v. *Manis, supra,* at p. 659.)

■ The slow speed was one factor which the officer reasonably could take into calculation (*People* v. *Anguiano,* 198 Cal.App.2d 426 [18 Cal. Rptr. 132]; *People* v. *Gibson,* 220 Cal.App.2d 15, 20 [33 Cal.Rptr. 775]; *Willams* v. *Superior Court,* 274 Cal.App.2d 709, 712 [79 Cal.Rptr. 489]); and the weaving and near misses were another (*People* v. *Daw,* 267 Cal.App.2d 560, 563 [73 Cal.Rptr. 89]).

Although the officer at one point in cross-examination conceded, in answer to a prolix and vague question, that all he had was a "hunch" ("when put that way"), he insisted thereafter that he had reasonable grounds to believe that the driver was intoxicated and said that he had more than an inkling or a guess of this when he put on his siren. He explained that he could not describe what a "hunch" is, and no definition was supplied. We are satisfied that the "hunch" (the word used by the cross-examiner) was not an

---

*A hearing was granted by the Supreme Court on October 15, 1969. The opinion of that court is reported in 1 Cal.3d 658 [83 Cal.Rptr. 179, 463 P.2d 403].

indefinable intuition, but was a reasonable deduction for the limited purpose of stopping the weaving vehicle and proceeding with tests, and that it was wholly compatible with, if not indeed required by, the officer's line of duty.

Because there is no conflict in the evidence on the subject of the manner of respondent's driving, the conclusion to be drawn as to the reasonableness of the officer's conduct is one of law. (*Janusch* v. *Department of Motor Vehicles,* 276 Cal.App.2d 193, 195-196 [80 Cal.Rptr. 726].)

The judgment is reversed, with direction to enter judgment denying issuance of a writ of mandate.

Rattigan, J., and Christian, J., concurred.