[Crim. No. 8613. Second Dist., Div. Four. Sept. 10, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES DAVIS, Defendant and Appellant.

Gerald D. Lenoir and David F. Cunningham for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and C. A. Collins, Deputy Attorney General, for Plaintiff and Respondent.

JEFFERSON, J. — In an amended information filed by the District Attorney of Los Angeles County, defendant was charged with the crime of possession of a narcotic, heroin, in violation of section 11500 of the Health and Safety Code. The amended information alleged three prior felony convictions, to wit, forgery on May 8, 1950, violation of section 11500 of the Health and Safety Code on December 30, 1953, and violation of section 11500 of the Health and Safety Code on June 28, 1957. Defendant entered a plea of not guilty and denied the prior convictions. Trial was by the court. Defendant personally and all counsel waived trial by jury.

Defendant was found guilty and the priors were found to be true. A probation report was ordered. Defendant's motion for a new trial was denied, probation was denied and defendant was sentenced to the state prison for the term prescribed by law. Defendant appeals from the judgment and orders denying his motion for a new trial and probation.

Appellant, although represented by counsel at the trial, originally appeared herein in propria persona and filed both an opening and reply brief. Thereafter, at his request, Gerald D. Lenoir was substituted as counsel for defendant. Counsel advised the court that he had reviewed the file and was unable to raise any points not raised in the briefs filed by appellant, and therefore, elected to stand on those briefs. Counsel did appear (through an associate) at the hearing of the appeal and presented oral argument in support of the contentions hereinafter discussed.

The facts appear as follows: Police Officer J. F. Aguirre testified that on March 5, 1962, as a narcotics investigator, he was on a "stake-out" at 11819 Robin Street, in Los Angeles, investigating reported narcotics activities at that address. He observed Mary Ballard and Kenneth Douthit leave that location. He and his partner Sergeant Edward Sanchez followed them to a motel located at 405 East Imperial Boulevard. The two persons left their car and went to room No. 5 of the motel. The two officers positioned themselves outside

and waited. At approximately 11 a.m. Officer Aguirre saw a person, known to him as Walter Morris, whom he had in the past arrested for a narcotics violation, enter and leave room No. 5. At approximately 11:30 a.m. the door to the room was opened and Mary Ballard and Kenneth Douthit began to leave. The officers approached them, identifying themselves as police officers and stated that they were investigating narcotics activities and wanted to talk to them. Mary told the officers, "We aren't messing around with any stuff — if you want to, come in and look around." She then stepped back into the room and the two officers entered. ■ Officer Aguirre was the first to enter at which time he saw defendant Davis. He observed defendant put his right hand into his right trouser pocket, draw it out, and take three hurried steps toward a doorway leading into a bathroom. The officer stopped him and asked him what he had in his hand. Defendant handed the officer a newspaper with a narcotic outfit wrapped up in it. Defendant was then placed under arrest, along with Mary Ballard and Kenneth Douthit, and searched. Two yellow balloons were found in a pocket in defendant's trousers, which contained a white powdery substance resembling heroin. The officer asked defendant how much stuff (heroin) he had. Defendant replied, "Not too much." Defendant was then asked, "Whose outfit is this?" He answered, "It's mine. It belongs to me." The officer asked defendant, "Do the other people in the room know anything about this stuff you have in your possession?" (Referring to the narcotics.) Defendant answered, "No, they don't know anything about it. I had it myself, and they didn't know I had it." In a later conversation with defendant in the police administration building, defendant stated the narcotics found were for his own use and that he had had his last fix the night before.

It was stipulated by all counsel that William King, a forensic chemist of the Los Angeles police department made an examination of the contents of the balloons which were introduced in evidence and that in his opinion the contents in the exhibit contained heroin.

Defendant testified in his own behalf. He admitted seeing Officer Aguirre and his partner on March 6, 1962, at the apartment. A Mr. and Mrs. Douthit were on the premises at the time. Kenneth was starting to open the door when Officer Sanchez rushed into the room. Mrs. Douthit shouted "Police officers." He overheard her ask the officers if they

had a search warrant. He heard the officer reply they did not need one.

Mary Ballard, called as a witness for the defense, testified she was the wife of Kenneth Douthit. She saw the officers enter her apartment. Her husband had attempted to open the door. She was standing at the foot of the bed and was startled by the officer's expression, "Don't move, you're under arrest." She turned her head and saw Officer Sanchez standing in the doorway with a drawn pistol. He approached her and said, "Mary Ballard, don't go for your brassiere." She testified that at no time did she tell the officer, "I don't have any stuff, go in and look and see." She further testified she did not give consent to the officers to enter the premises. She did not go outside and say "Go on in and look." She did ask Officer Aguirre, "Do you have a search warrant?" He replied, "I don't need a warrant," and then proceeded to search the premises.

Mary Ballard further testified that she observed the officers' search of the premises; she did not see them remove anything from defendant's pocket; they did, however, recover some items from a trash can. When the officers came in, defendant was standing in the doorway of the bathroom. He had his handkerchief in his hand. He did not have a package which contained a hypodermic needle. Kenneth Douthit testified that his wife Mary had not gone outside and invited the officers in. He heard his wife inquire of the officers whether they had a search warrant and heard the officer reply they did not need one.

Officer Edward J. Sanchez was called on rebuttal and testified he was with Officer Aguirre and saw him recover narcotics from the defendant's pocket. He saw defendant hand a hypodermic outfit to Officer Aguirre. He did not see Aguirre take anything out of the wastepaper basket in the apartment.

Defendant contends the officers lacked probable cause for the arrest of defendant or for the search of the premises where he was arrested.　　"Reasonable or probable cause for an arrest has been the subject of much judicial scrutiny and decision. There is no exact formula for the determination of reasonableness. Each case must be decided on its own facts and circumstances [citations] — and on the total atmosphere of the case. [Citations.] Reasonable cause has been generally defined to be such a state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is

guilty of a crime. [Citations.] Probable cause has also been defined as having more evidence for than against; supported by evidence which inclines the mind to believe, but leaves some room for doubt. [Citations.]" (*People* v. *Ingle*, 53 Cal.2d 407, 412-413 [2 Cal.Rptr. 14, 348 P.2d 577].)

In the case before us, trained narcotic officers were on a "stake-out" to observe and apprehend suspected narcotic offenders. They observed a man, whom they had arrested before on a narcotic charge, enter and leave the premises where defendant was later arrested, and proceeded to interrogate the persons emerging from the premises. "When police officers have suspicions concerning criminal activities it is proper for them 'to seek interviews with suspects or witnesses or to call upon them at their homes for such purposes.' [Citations.]" (*People* v. *McCottry*, 205 Cal.App.2d 698, 703 [23 Cal.Rptr. 309].)

The officers testified consent to entry and search of the premises was given. While defendant and his witnesses contradicted the evidence of consent, that conflict was resolved by the trial court in favor of the People and we cannot reweigh the evidence on appeal. (*People* v. *Newland*, 15 Cal.2d, 678, 681 [104 P.2d 778].)

The furtive movements of defendant and his possession of the narcotic outfit justified the arrest and search.

Defendant next contends that the prosecuting witnesses gave testimony, in another but related proceeding, inconsistent with their testimony at his trial, and that therefore their testimony must be disbelieved. Defendant asserts, that in another trial the officers testified they knew Mary Douthit, having been given prior information about her, but that at defendant's trial they testified they did not know either Kenneth or Mary Douthit. However, the testimony at "the other trial" to which defendant refers is not before us and matters outside the record may not be considered. (*People* v. *Lyons*, 204 Cal. App.2d 364, 368 [22 Cal.Rptr. 327].) Futhermore, the credibility of witnesses and resolving conflicts, if any, are exclusive with the trial court and we may not reweigh or reconsider them. (*People* v. *Penrice*, 195 Cal.App.2d 360, 363 [15 Cal.Rptr. 733].)

Judgment of conviction is affirmed and the purported appeal from the orders denying defendant's motion for new trial and probation is dismissed.

Burke, P. J., and Kingsley, J., concurred.

A petition for a rehearing was denied October 7, 1963, and appellant's petition for a hearing by the Supreme Court was denied November 6, 1963.