James **DAVIS**, Appellant,

v.

**PEOPLE OF the STATE OF CALIFORNIA and Robert A. Heinze, Warden, Folsom Prison, Represa, California, Appellees.**

No. 19358.

United States Court of Appeals
Ninth Circuit.

Feb. 18, 1965.

Rehearing Denied March 26, 1965.

John Alan Montag, Los Angeles, Cal., for appellant.

Thomas C. Lynch, Atty. Gen. of California, Doris H. Maier, Asst. Atty. Gen. of California, Sacramento, Cal., for appellees.

Before POPE, HAMLEY and ELY, Circuit Judges.

HAMLEY, Circuit Judge:

James Davis, a California state prisoner, applied to the district court for a writ of habeas corpus.[1] The detention complained of results from a state court conviction, after a trial without a jury, of the crime of possession of a narcotic, heroin, in violation of California Health and Safety Code, § 11500.[2]

The district court, on its own motion and without hearing, denied the application. That court thereafter entered a certificate of probable cause, enabling Davis to appeal. See 28 U.S.C. § 2253 (1958). He has done so.

Appellant contends that the district court erred in holding that the evidence which led to the conviction was not obtained as a result of an unlawful search and seizure. The evidence in question consisted of a narcotic outfit wrapped in a newspaper and two balloons containing heroin.

Since the district court denied the application without a hearing, the facts to be considered are those set out in the application for a writ. In the preparation of that application Davis was represented by retained counsel. The method employed in setting out the pertinent facts in the application was to summarize, in considerable detail, the testimony of the various witnesses. This same testimony is also summarized, although in less detail, in the opinion of the District Court of Appeal.[3]

The summarized testimony establishes, without dispute, that on the morning of March 5, 1962, police officers J. F. Aguirre and Edward Sanchez were on a "stake-out" at 11819 Robin Street in Los Angeles. They were investigating reported narcotics activities at that address. Aguirre observed Mary Ballard and Kenneth Douthit leave that location. The two officers followed them to a motel at 405 East Imperial Boulevard, where Mary Ballard and Kenneth Douthit entered room No. 5.

Aguirre and Sanchez positioned themselves at the door to listen to conversation within the room, but heard nothing. About three minutes later Aguirre went to the office of the motel manager and ascertained that room No. 5 was registered to Mary Ballard and Kenneth Douthit. At approximately 11 A.M. Aguirre saw a person known to him as Walter Morris, whom he had once arrested for a nar-

1. While Davis did not name, as a defendant, Robert A. Heinze, Warden, Folsom Prison, Represa, California, who has Davis in custody, we herewith grant Davis' motion, orally made at the time of argument, that Heinze be added as a party. See Rule 21, Federal Rules of Civil Procedure. See, also, Mullaney v. Anderson, 342 U.S. 415, 417, 72 S.Ct. 428, 96 L.Ed. 458; Benson v. State of California, 9 Cir., 328 F.2d 159, 162; 3 Moore's Federal Practice (2d ed.) § 21.04, page 2906.

2. The state trial court judgment was affirmed. People v. Davis, 220 Cal.App.2d 49, 33 Cal.Rptr. 590. The California Supreme Court denied his petition for rehearing (unreported).

3. See People v. Davis, supra.

cotics violation, enter and then leave room No. 5. At this time neither officer had a warrant to search any place or person, or a warrant to arrest any person.

Concerning the manner in which the officers entered the room, the testimony is in conflict. Aguirre testified that at approximately 11:30 A.M. Mary Ballard and Kenneth Douthit began to leave. He testified that he and his partner approached them, displayed their badges, identified themselves as police officers, told them that they were investigating narcotics activity, and stated that the officers wanted to talk to them. Aguirre testified that Mary Ballard then volunteered, "We aren't messing around with any stuff—if you want to, come in and look around." [4] According to Aguirre, he then entered the room ahead of his partner. During this episode Aguirre testified, neither he nor Sanchez had their guns drawn, nor did either of them open the door.

Mary Charlene Douthit, who is the Mary Ballard referred to by Officer Aguirre,[5] testified that she was not leaving the apartment at the time in question, but was standing at the foot of the bed wrapping up a blouse that she had washed. Her husband, she testified, attempted to open the door and she was startled by the words "Don't move. You are under arrest." It was her testimony that she observed Sanchez with his pistol drawn and that he walked to her and stated, "Mary Ballard, don't go for your brassiere." According to her, Aguirre followed his partner into the room.

Mary Ballard further testified that she did not go outside and invite the officers in, or consent to a search of the room. She testified that Sanchez told her to remove her blouse, at which point she asked him if he had a search warrant.

According to her testimony, Sanchez stated "I don't need a search warrant." Kenneth Douthit and appellant James Davis gave testimony tending to support that of Mary Ballard concerning the officers' entry. In this connection Douthit stated that when the officers came in they stated, "You are all under arrest."

With regard to the manner in which the items of evidence were obtained after the officers entered the room, Aguirre's testimony is, in most respects, undisputed. He testified that he saw Davis standing at the foot of a bed and observed him quietly put his hand in his right trouser pocket and draw it out and then take three hurried steps through a doorway leading to a bathroom. Aguirre testified that he then ran toward Davis, stopped him, and asked what he had in his hand. According to Aguirre, Davis responded by handing the officer a package wrapped in a newspaper. Aguirre opened it and found it to contain the narcotic outfit.

Officer Aguirre testified that Davis, Mary Ballard and Kenneth Douthit were then placed under arrest, whereupon Aguirre searched Davis and found the two balloons containing heroin in his trouser pocket. Except for the contrary testimony that the officers stated that "You are all under arrest," when they entered the room, and Davis' testimony that he had not seen any narcotics, Aguirre's version of the actual seizure is uncontradicted.[6]

The district court held that the initial entry into the apartment was made with the valid consent of Mary Ballard. Davis argues that the district court erred in so holding and that the illegality of the entry, because made without valid consent, tainted everything that thereafter transpired leading to seizure of the evidence.

4. On cross-examination, Aguirre testified that what Mary Ballard said was " * * * we have nothing, we have no narcotics, come in and look around if you want."

5. Mrs. Douthit testified that she and Kenneth Douthit were married.

6. Douthit testified that Davis was a guest in the motel room, and Davis testified that, at the time the officers arrived, he had been in the room about three hours and had been trying to get some sleep.

Davis' argument proceeds on the assumption that the state trial court found the facts concerning entry into the apartment to be as testified to by Officer Aguirre, and involves no challenge to the correctness of that trial court finding.[7] Under these circumstances the posture of the entry question is the same as if there had been an agreed statement of facts consistent with Aguirre's testimony concerning the entry, the only question being the application of the law to those facts.

■ One reason advanced by Davis why, under Aguirre's version, it should be held that Mary Ballard did not give a valid consent to enter, is that when the officers came to the door they told her that they were police officers investigating narcotics activities.

This statement constituted neither a demand to enter nor a demand for information. It was not even a request to enter and, according to Aguirre, no such request was made, the invitation being volunteered by Mary Ballard. The statement complained of served only to identify the officers, explain why they were present, and why they wished to talk with Mary Ballard. This was entirely proper and did not interject a coercive element which would render Mary Ballard's consent to enter involuntary.

Davis further argues, however, that incidents occurring prior to the officers' conversation with Mary Ballard tend to establish the illegality of the entry. Referring to these events as encompassing the "total atmosphere of the case," Davis makes the following assertions: the officers were conducting a general exploratory investigation of unlawful narcotics activities on a "stake-out" at another address; the officers were not investigating Mary Ballard and Kenneth

Douthit nor the motel to which they went; the officers gave no reason for following Mary Ballard and Kenneth Douthit to the motel; there was no reason to suspect they were engaged in narcotics activities warranting police surveillance, and the officers were trespassing and eavesdropping at the motel.

■ Since the district court did not err in determining, on the basis of the implied state trial court findings, that the police officers entered the motel room pursuant to the permission voluntarily given by Mary Ballard, all of the prior events, whether or not correctly characterized by appellant, are wholly immaterial.

■ Passing to the manner in which the evidence was obtained after the officers entered the motel room, the district court held that when Davis handed to Aguirre the package containing the narcotic outfit, he did so voluntarily and prior or any arrest or search.[8] When the package was found to contain a narcotic outfit, the district court held, this provided probable cause for the arrest which followed, and the search of Davis' person incident to that arrest, resulting in the seizure of the balloons containing heroin, was therefore reasonable.

Davis challenges this holding. He contends that there was no reasonable cause for his "arrest" (meaning the act of stopping him on the way to the bathroom), or for the "search and seizure" of the evidence (apparently meaning the act of appellant in handing the package to Aguirre when he was stopped and questioned). In this connection Davis argues that it was not a "furtive" movement for him to place his hand in his pocket, remove his hand therefrom, and then take three hurried steps in the direction of the bathroom.

---

7. This explains why Davis makes no contention that he did not receive a full and fair evidentiary hearing in the state court, or that the district court erred in failing to hold a plenary hearing or call for, and examine, the state court record.

8. The consent given by Mary Ballard for the police officers to enter the room could not, of course, extend to a search of the person of Davis. The State does not rely on the consent given by Mary Ballard to "look around" as authority for anything they did, here in issue, after entering the motel room.

The district court did not characterize the action by Davis as "furtive," but his action was so described by the District Court of Appeal.[9] The latter court, however, did not hold that such movements, standing alone, provided probable cause for the arrest. What that court did hold was that the "furtive" movements of Davis " * * * and his possession of the narcotic outfit justified the arrest and search."

It is therefore apparent that the District Court of Appeal did not regard the action of Aguirre in stopping Davis and asking him what he had in his hands as the arrest, but considered that the arrest occurred after Aguirre opened the package which Davis handed to him and discovered that it contained a narcotic outfit. Thus the District Court of Appeal in affirming the conviction, and the district court in denying the application for a writ, followed the same line of reasoning.

■ Under this line of reasoning it is immaterial whether the described movements of Davis were "furtive." The important question is whether the action of Aguirre in stopping Davis in his movement, furtive or not, and in asking him what he had in his hand constituted an arrest, so that it could be said that the narcotic outfit was obtained from appellant as the result of a search following an arrest arguably without probable cause.

Under California Penal Code § 834, an arrest " * * * is taking a person into custody, in a case and in the manner authorized by law." Under the undisputed facts, no one took Davis into custody prior to the time that the police opened the package and found it to contain a narcotic outfit. He was temporarily restrained prior to that time, not for the purpose of taking him into custody, but to interrogate him. This was not an arrest.[10]

In response to Officer Aguirre's question as to what Davis had in his hand, the latter handed the officer the package wrapped in newspaper. While Davis took the witness stand he did not testify that he was coerced into surrendering the package, nor did he testify that he was then under the impression that he was under arrest. This was not a search, and the seizure did not occur until the officer opened the package as he was impliedly invited to do and discovered that it contained a narcotic outfit. This provided probable cause for the arrest which was then made. The search of Davis' person, leading to the seizure of the two balloons containing heroin, was subsequent and incident to that arrest and therefore reasonable and permissible although Aguirre had no search warrant.

■ Davis next argues, on the basis of Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, and two California decisions, that he was unconstitutionally deprived of his right to counsel at the time Aguirre stopped him on the way to the bathroom and asked him what he had in his hand. This contention was not advanced in the district court and therefore may not be made here unless necessary to prevent a manifest miscarriage of justice. Daugharty v. Gladden, 9 Cir., 257 F.2d 750, 758. In our opinion Davis' conviction is not a manifest miscarriage of justice.[11]

9. The district court did make reference to Davis' action in "hurrying" toward the bathroom. This was said in connection with the district court's alternative theory that if Aguirre's action in stopping Davis and asking him what he had in his hand constituted a search, it was not unlawful because it was necessary in order to prevent the destruction of evidence or contraband. For reasons which will appear it is unnecessary for us to evaluate this alternative theory.

10. See Busby v. United States, 9 Cir., 296 F.2d 328; People v. Gibson, 220 Cal.App.2d 15, 33 Cal.Rptr. 775; People v. Harris, 212 Cal.App.2d 845, 28 Cal. Rptr. 458. See also, Rios v. United States, 364 U.S. 253, 262, 80 S.Ct. 1431, 4 L.Ed.2d 1688; Hart v. United States, 5 Cir., 316 F.2d 916.

11. As to this issue there is also a question of exhaustion of state remedies which would probably have forestalled even district court consideration. See Blair v. California, 9 Cir., 340 F.2d 741.

Finally, Davis contends, the district court erred in failing to decide the legality of his arrest " * * * in conformity with the state statutes complying with the constitutional mandate of the Fourth Amendment."

We have already discussed the substance of what is argued under this point and have found it to be without merit.

Affirmed.