UNITED STATES of America

v.

Samuel WRIEOLE, Appellant.

No. 16106.

United States Court of Appeals
Third Circuit.

Argued March 9, 1967.

Decided June 16, 1967.

Robert I. Ansell, Asbury Park, N. J. (Anschelewitz, Barr & Ansell, Asbury Park, N. J., S. M. Chris Franzblau, Newark, N. J., on the brief), for appellant.

Richard D. Catenacci, Asst. U. S. Atty., Newark, N. J. (David M. Satz, Jr., U. S. Atty., Newark, N. J., on the brief), for appellee.

Before McLAUGHLIN, HASTIE and FREEDMAN, Circuit Judges.

## OPINION OF THE COURT

McLAUGHLIN, Circuit Judge.

An information filed against appellant stated that he was engaged in the business of accepting wagers and therefore was liable for tax under Section 4401 of the Internal Revenue Code of 1954 (26 U.S.C. § 4401); that he was required to pay the special occupational tax under 26 U.S.C. § 4411 and failed to do so for the period stated; that he was required to supply registration information specified in Section 4412 of the 1954 Internal Revenue Code (26 U.S.C. § 4412) and failed to do so for the said period. Appellant was convicted, sentence was suspended; he was placed on probation and fined.

[1, 2] On appellant's behalf it is asserted that the trial court erred in denying the defense motion for acquittal made at the end of the Government's case. The defendant failed to preserve his right to question the sufficiency of the evidence by never renewing that motion. United States v. Manos, 340 F.2d 534, 536–537 (3 Cir. 1955) and decisions there cited. In addition to that, our own examination of the record thoroughly satisfies us that there was sufficient evidence in the Government's proofs to justify appellant's conviction here as a principal or banker.

Appellant also argues that his arrest was illegal and that therefore the evidence on his person which he produced at the command of the then arresting officer, New Jersey State trooper Maziekien, was wrongfully obtained.

Appellant was arrested on December 16, 1964 in the course of a combined State and Federal raid of a store called "Mike's Sugar Bowl", Asbury Park, New Jersey. That place had been under surveillance by the Intelligence Division of the Internal Revenue Service since the preceding August. Regarding appellant, one Miraglia who was with him when he was arrested, and Delloiacono, the owner of the store, Special Agent Dubrow, in charge of both the surveillance and the raid, testified at the hearing on motion to suppress the above mentioned evidence, about the Intelligence Division's knowledge of them as follows:

"I knew Sam Wrieole and Russell Miraglia to have a background in wagering activity. The Intelligence Division files indicate these men to be involved in wagering. They also indicated that Miraglia and Wrieole had arrest records involving wagering activity or for wagering. We also had information from a confidential source that they were currently involved in wagering activity, and based upon the surveillance information that I received plus the information transmitted by the undercover agent regarding the wagering activity on the premises, plus our prior investigation of September 1964, we believed that there was a gambling operation going on in those premises in which Miraglia, Wrieole, Delloiacono and others were involved in."

The raiding party had a search warrant for the premises and one of arrest for Delloiacono as owner. State trooper

Mazikien, Detctive, Second Class, of Criminal Investigation Section of the New Jersey State Police, was one of the raiding officers. He testified that his troop assignment included investigation of gambling activities. He was later joined at the raid by his commanding officers, Captain Dollar and Major Halley. He was asked *"What was the purpose of your accompanying the Federal agents on the raid?"* He answered *"My purpose there was to effect any state arrest as the situation may warrant after the raid was in progress. Q. For violations of what? A. The gambling laws of the State of New Jersey."* (Emphasis supplied.)

Respecting his knowledge of appellant and what had been going on at the Sugar Bowl prior to the raid, his following testimony is illuminative:

"Q. Did you know anything of the background of Mr. Wrieole? A. Yes, I did. In either '62 or '63 I was a party to a gambling raid in Long Branch where he was arrested.

Q. On what charge? A. Lottery.

Q. Did you know—pardon.

Were you advised as to what type of activity was conducted at Mike's Sugar Bowl? A. Yes, it was a Sugar Bowl but a front for gambling activity in that these persons would frequent here and visit here regularly.

Q. Were you told of any bets having been placed on the premises? A. Yes, I had been told bets were made in these premises.

Q. Who told you that? A. Agents of the Internal Revenue Service.

Q. When was that? A. That was the morning of the raid."

Trooper Maziekien was asked specifically:

*"Directing your attention to December 16, 1964, did you participate in an arrest? A. Yes, I did. Q. Could you tell us where that was? A. That was a luncheonette known as Mike's Sugar Bowl in Asbury Park, New Jersey. Q. Who was with you? A.*

*Agents of Internal Revenue Service."* (Emphasis supplied.)

*On cross-examination, the trooper was queried about what he did during the raid regarding appellant and Miraglia. He said he went up to them "Asked who they were. They told me. I advised one to go one way, one to stay where he was so they could be searched further for identification and anything else they may have had on their possession. * * * They complied with the request."* (Emphasis supplied). The Court said to the witness: "I see somewhere in the papers that somebody directed them to empty the contents of their pockets." The trooper answered, "Yes, I did." In response to more questions the trooper told how he had met the agents before the raid somewhere outside of Asbury Park and that *one of them advised him at that time "* * * that this Mike's Sugar Bowl was a front for a gambling operation." The agents told him "They were going to raid the premises, and my purpose in being there was to effect any State arrest."* (Emphasis supplied).

█ It is admitted in appellant's brief that the arrest of Wrieole for possession of gambling paraphernalia (N.J.S.A. 2A:121–3) did not require that the offense be committed in the officer's presence.

█ Appellant would have it that under the above facts which were not contradicted the trooper did not arrest Wrieole. This is merely an assumption, unwarranted by the record and contrary to the New Jersey law which controls the State arrest. United States v. Di Re, 332 U.S. 581, 589, 68 S.Ct. 222, 92 L.Ed. 210 (1948); United States v. Viale, 312 F.2d 595, 599 (2 Cir. 1963). The late New Jersey Supreme Court decision in State v. Contursi, 44 N.J. 422, 433–434, 209 A.2d 829 (1965) is on all fours with our situation. There our problem was posed as follows: "The final query is whether there was an actual arrest of defendant at the time and by means of the order to empty his

pockets." The Court said pages 433 and 434, 209 A.2d at page 836:

"We have held, however, that where an arrest is valid independently of, and is not made to depend on, the search or its result, evidence produced by the search will not be suppressed merely 'because in precise point of time the arrest does not precede the search', State v. Doyle, 42 N.J. 334, 343, 200 A.2d 606, 611 (1964). But without resort to that rule, *we think here it is clear on the uncontradicted proofs that the arrest, in the connotation involved, legally took place by the command to disgorge the contents of the pockets and thus prior to the search, at which moment, as we have previously held, there was probable cause to arrest. It is true that the record does not show that any formal language of arrest was used, but that fact is not vital. The restraint of the person and restriction of liberty of movement was sufficient, in the circumstances (where the object was not merely to question), to constitute the arrest.* State v. Doyle, supra, 42 N.J., at p. 342, 200 A.2d 606; Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); cf. Davis v. People of State of California, supra, 341 F.2d 982 (9 Cir. 1965). In the Henry case the triggering act of the FBI agents was to stop a car in which the defendant was riding. Although probable cause to arrest was found not to exist then, Mr. Justice Douglas said: 'When the officers interrupted the two men and restricted their liberty of movement, the arrest, for purposes of this case, was complete.' 80 S.Ct., at p. 171, 4 L.Ed.2d, at p. 139." (Emphasis supplied).

Henry v. United States, 361 U.S. 98, 103, 80 S.Ct. 168, 171 (1959) fully supports the proposition that the trooper did in fact and law arrest appellant. In Henry, the Court held and not as appellant asserts because the prosecution conceded it, " * * * that the arrest took place when the federal agents stopped the car. That is our view on the facts of this particular case. When the officers interrupted the two men and restricted their liberty of movement, the arrest for the purposes of this case was complete."

▌ Our facts parallel those in Contursi. Wrieole, who is the only one of the three persons sought as principals with whom we deal in this appeal, had been known to the trooper for a year or more as a person involved in New Jersey illegal gambling. The trooper at first did not recognize Wrieole as one of the two men before him, but on the latter giving his name, the trooper did immediately identify him. It was directly thereafter that the trooper separated Miraglia and Wrieole so that they could be searched. The raid was a joint Federal and State operation. Trooper Maziekien, the specialist representing New Jersey, at the moment when he realized who Wrieole was, did, as he swore under oath, participate vitally in the arrest of the former. Later on the federal men did follow through by taking Wrieole into their own custody but the original restraint of Wrieole and restriction of his liberty of movement had been properly effected previously by the trooper under the governing New Jersey law.

The facts already related justify that arrest. The trooper had reliable information from the federal agents that the premises they were raiding was a gambling establishment. He saw the premises and the people thereon. As one of the eye witnesses to that scene put it "the store itself was pretty bare of inventory as a going restaurant or candy store, and yet all these people were there at the critical hours, eleven to one." The trooper had been told by the agents that "bets were made on the premises." He went up to appellant and Miraglia, asked them who they were and they told him. We have seen that he knew enough about Wrieole's background to reasonably associate him with gambling in New Jersey. Regarding Miraglia, who was with appellant and was also arrested, the trooper said, "I knew that he had been arrested for gambling violations in 1948 at the

Willows Hotel in Lakewood, and since I have been assigned to the Criminal Investigation Section, the name has been mentioned to me on several occasions in relation to gambling situations."

█ There cannot be any sincere knowledgeable disagreement today on the law of probable cause for arrest. In Brinegar v. United States, 338 U.S. 160, 175–176, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1948) Mr. Justice Rutledge gives the alpha and omega of it in two fine paragraphs:

" 'The substance of all the definitions' of probable cause 'is a reasonable ground for belief of guilt.' McCarthy v. De Armit, 99 Pa. 63, 69, quoted with approval in the Carroll opinion. 267 U.S. at 161 [45 S.Ct. at page 288, 69 L.Ed. 543, 39 A.L.R. 790]. And this 'means less than evidence which would justify condemnation' or conviction, as Marshall, C. J., said for the Court more than a century ago in Locke v. United States, 7 Cranch 339, 348 [3 L.Ed. 364]. Since Marshall's time, at any rate, it has come to mean more than bare suspicion: Probable cause exists where 'the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed. Carroll v. United States, 267 U.S. 132, 162 [45 S.Ct. 280, 288, 69 L.Ed. 543, 39 A.L.R. 790].

"These long-prevailing standards seek to safeguard citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime. They also seek to give fair leeway for enforcing the law in the community's protection. Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability. The rule of probable cause is a practical, non-technical conception affording the best compromise that has been found for accommodating these often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice."

As set out in Brinegar and Carroll, supra, the trouble line can be that between mere suspicion and probable cause. Where it exists, as said in Brinegar p. 176, 69 S.Ct. p. 1311, "That line necessarily must be drawn by an act of judgment formed in the light of the particular situation and with account taken of all the circumstances."

Wrieole had, within two years of this confrontation with the trooper, given the latter reasonable ground for believing he was tied into illicit gambling in the same area (Long Branch the locale of Wrieole's first arrest is a short distance from Asbury Park). Appellant's presence in the Sugar Bowl together with the facts that the trooper had before him when he saw Wrieole with Miraglia and the former identified himself, repeated even more strongly the substantial basis for trooper Maziekien believing that Wrieole was at the time engaged in forbidden gambling. See United States v. Viale, supra, 312 F.2d p. 601. That justified belief and the existing circumstances not only failed to indicate that Wrieole was about lawful affairs but affirmatively cried out the unlawful nature of his business in the so called store. The district judge as he stated, taking the collective impact of the trooper's testimony and that of the agents, made a "considered judgment" that probable cause existed for Wrieole's arrest. Quoting Brinegar, pp. 177–178, 69 S.Ct. p. 1312, "We cannot say this conclusion was wrong, or was so lacking in reason and consistency with the Fourth Amendment's purposes that it should now be overridden." We find no genuine distinction between our situation and those in Brinegar and Carroll.

■ From all of the above we are convinced and so hold that the trooper had probable cause to believe Wrieole was violating the New Jersey statute prohibiting the possession of lottery paraphernalia. The trooper was familiar with the particular type of state offense. He did not obtain the identity of appellant and Miraglia as a result of searching them. He simply asked both who they were and they told him. With that information he recognized appellant as a person arrested on a similar charge a year or so previously. He also identified Miraglia as having been arrested in an earlier state gambling raid and who had been mentioned to the trooper on several occasions in relation to gambling situations. He had been reliably informed that the Sugar Bowl was just such an operation. The composite knowledge he had gave him reasonable grounds for believing that both men were concerned with the current Sugar Bowl gambling business in violation of both the New Jersey and Federal law.

■ We have especially stressed the completely lawful position of trooper Maziekien in making his arrest of Wrieole. That arrest was squarely before the trial judge on the trooper's testimony. The District Attorney during the cross-examination of the trooper addressed the judge as follows: "To clarify that, we are charging them with a Federal offense, which is different in substance than the State offense. However, we maintain that the probable cause was based upon probable cause to believe the State offense had been committed and was being committed." While the arrest by the trooper is the core of the issue in this appeal, we also find correct the view of the trial court that the actions of the federal and state agencies were a combined law enforcement project and that the agents going into the raid had the requisite probable cause for legitimately arresting appellant and Miraglia for having violated or being in the course of violating the federal tax laws. Later on during the raid, after the state arrest by the trooper, the agents did take the two men into custody for the federal offense.[1] That arrest is categorically admitted by appellant.

Since, as we have found, the trooper arrested appellant, having probable cause for that arrest, the search of appellant's person was a lawful, reasonable incident to that arrest. United States v. Rabinowitz, 339 U.S. 56, 60, 70 S.Ct. 430, 94 L.Ed. 653 (1950); Agnello v. United States, 269 U.S. 20, 30, 46 S.Ct. 4, 70 L.Ed. 145 (1925).

The remainder of appellant's points have been carefully examined. They are without merit.

The judgment of the District Court will be affirmed.

---

1. The federal agents who participated in the arrests of appellant and Miraglia had themselves much additional first-hand information obtained during their surveillance including, inter alia, the placing of more than thirty bets by one of the agents; of Wrieole accepting a bet at the Sugar Bowl just two days before the raid; that he and Miraglia had frequented the premises during the two months period of the investigation. There were also descriptions of the telephones present, their heavy use; of the absence of store or restaurant equipment, etc. That evidence was first, ample to sustain the course of the agents in the raid of themselves taking over the custody of Wrieole for the federal misdemeanor and second, of primary importance in the trial proofs of that offense.