[Crim. No. 12575.   Second Dist., Div. One.   Sept. 14, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. ROY DEAN WIGGINTON et al., Defendants and Appellants.

Frank Duncan for Defendants and Appellants.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Phillip Samovar, Deputy Attorney General, for Plaintiff and Respondent.

LILLIE, J.—Defendants were convicted by a jury of robbery, first degree and found to be armed; Wigginton

admitted three prior felony convictions. They appeal from judgments of conviction.

Around 12:50 a.m. on December 15, 1965, defendants entered a service station in Downey where one Strayhorn was working in the office. Wigginton, holding a gun in his hand, slipped open the door to the office and told him to be quiet, do as he was told and he wouldn't get hurt. Wigginton told Strayhorn to put the money in a sack. Strayhorn put a roll of nickels and two rolls of pennies in the bag; then upon demand of Wigginton, he poured all of the quarters (not rolled) into the bag; Wigginton demanded the paper money and Strayhorn pulled it out of his pocket and threw it into the sack. Bohannan, who also held a gun, wiped the marks off the door and told Strayhorn to keep quiet and stay where he was until they got out of sight.

Two and a half hours later Officer LoBuglio's attention was attracted to an automobile, the window of which had been broken in the vicinity of the lock on the driver's side. A portion of the glass appeared to be missing from the window and he thought that it had been removed in order to get inside to unlock the door. Believing the car may have been a stolen automobile, he and Officer Lee followed the vehicle in order to obtain the license number. The officers were in uniform and driving a black and white police vehicle. Officer LoBuglio observed Bohannan (the driver) and Wigginton (seated on the passenger side) look around and observe the police car; then he saw Wigginton move clear over to the right-hand side and appear to lean over "placing something under the seat." They stopped the defendants and Officer Lee asked them to get out of the car; he patted them down for weapons by running his hands over the outside of defendants' garments; no search was then made. Officer LoBuglio went to the car and searched that portion of the right front seat where Wigginton bent over and appeared to place something under it; under the seat he found two small automatic pistols which were loaded. He walked back to the rear of the car and placed both of the defendants under arrest and advised them of their constitutional rights. Then he made a further search of the vehicle finding two rolls of pennies and a roll of nickels in the glove compartment.

At the station Wigginton was searched; the officer found in his pocket a .25 caliber automatic type shell, the same caliber as those contained in one of the guns, and $17 folded in halves (two $5 and seven $1). As he was searching Bohannan

he observed six shells (.25 caliber automatic) under the seat in the tank occupied by Bohannan; these fit the gun found in the vehicle.

Bohannan offered an alibi defense; he testified that at the time of the robbery in Downey, Wigginton, he and his employer were in a Donut shop and later in a bar in Gardena; he denied ever having seen the guns found by the officer and having any gun shells on him. Wigginton did not testify.

Appellants' main argument is directed to the legality of the search and arrest; they claim error in the admission in evidence of the guns found in the car before their arrest and the rolls of coins, bullets and money found in their possession after arrest.

▇ Law enforcement officers have the right to stop persons out of doors at night when there are suspicious circumstances, for the purpose of investigation and to question them. (*People* v. *One 1960 Cadillac Coupe*, 62 Cal.2d 92, 95-96 [41 Cal.Rptr. 290, 396 P.2d 706] ; *People* v. *Mickelson*, 59 Cal.2d 448, 450 [30 Cal.Rptr. 18, 380 P.2d 658] ; *People* v. *Davis*, 222 Cal.App.2d 75, 78 [34 Cal.Rptr. 796] ; *People* v. *Gibson*, 220 Cal.App.2d 15, 20 [33 Cal.Rptr. 775] ; *People* v. *Anguiano*, 198 Cal.App.2d 426, 429-430 [18 Cal.Rptr. 132] ; *People* v. *Blodgett*, 46 Cal.2d 114, 117 [293 P.2d 57] ; *People* v. *Beverly*, 200 Cal.App.2d 119, 125 [19 Cal.Rptr. 67] ; *People* v. *Porter*, 196 Cal.App.2d 684, 686 [16 Cal.Rptr. 886].) ▇ In the very early morning hours the officers noticed a car that had a window broken on the driver's side and part of the glass missing around the area of the lock; believing that the car may have been stolen, they made a U-turn and followed it for the purpose of taking the license number; they observed the defendants turn and look behind them and, after Wigginton saw the two officers in the black and white police car, Wigginton move clear over to the right-hand side, lean over and appear to put something under the seat. These circumstances justified the officers in stopping the vehicle. Then, obviously for their own protection, the officers ordered the defendants out of the car where Officer Lee patted them down for weapons, and Officer LoBuglio searched the vehicle in the area in which he had seen Wigginton bend over and appear to put something under the seat, finding two small loaded automatics. It was then defendants were arrested. A subsequent search of the car disclosed the rolls of money.

▇ In the absence of a warrant a peace officer may arrest a person whenever he has reasonable cause to believe that the

person to be arrested has committed a felony. (§ 836, Pen. Code; *People* v. *Torres,* 56 Cal.2d 864, 866 [17 Cal.Rptr. 495, 366 P.2d 823]; *People* v. *Fischer,* 49 Cal.2d 442, 446 [317 P.2d 967]; *People* v. *Ingle,* 53 Cal.2d 407, 412 [2 Cal. Rptr. 14, 348 P.2d 577].) ▮ "To constitute probable cause for arrest, a state of facts must be known to the officer that would lead a man of ordinary care and prudence to believe, or to entertain a strong suspicion, that the person arrested is guilty." (*People* v. *Hillery,* 65 Cal.2d 795, 803 [56 Cal.Rptr. 280, 423 P.2d 208]; *People* v. *Stewart,* 62 Cal.2d 571, 577-578 [43 Cal.Rptr. 201, 400 P.2d 97]; *People* v. *Cockrell,* 63 Cal.2d 659, 665 [47 Cal.Rptr. 788, 408 P.2d 116].) ▮ Clearly apparent from the record is the factual basis supporting probable cause in this case, and the arrest was valid; but appellants raise the question whether the search of the vehicle yielding the two loaded automatics was incident thereto, the same having been made immediately prior to the arrest.

A partial cursory search of the automobile was conducted before defendants were placed under arrest; the area searched was that portion of the front seat where Wigginton had been observed bending over in what appeared to be an attempt to hide something under the seat. It was under the seat that the officers found the two automatics. Then after defendants' arrest, Officer LoBuglio made a thorough search of the vehicle and found three rolls of coins in the glove compartment. Thereafter at the station paper money and shells were found on the person of Wigginton and bullets were found in Bohannan's cell. ▮ " 'A search which is made as an incident to a lawful arrest, based on reasonable cause to believe that the person arrested has committed a felony, is a lawful search even though made without a warrant [citations], and even though it occurs before rather than after the arrest. [Citations.] " (*People* v. *Brice,* 234 Cal.App.2d 258, 265 [44 Cal.Rptr. 231]; *People* v. *Ingle,* 53 Cal.2d 407, 413 [2 Cal. Rptr. 14, 348 P.2d 577].) ▮ In the early hours of the morning the officers observed Wigginton's furtive action upon his discovery of the police vehicle following the car; they had reasonable grounds to believe that Wigginton was hiding contraband or a weapon and the search of the car was reasonable. (*People* v. *Blodgett,* 46 Cal.2d 114, 117 [293 P.2d 57].) "The significance of the movements of the defendants is that they were made immediately upon realizing they were to be confronted by the police." (*People* v. *Sanson,* 156 Cal.App.2d

250, 253 [319 P.2d 422].) We hold that the suspicious circumstances and the furtive movement on the part of one of the defendants gave the officer reasonable grounds to arrest the defendants and conduct a search incidental to that arrest.

On the other grounds, it appears that the officers acted properly in searching defendants' vehicle before the arrest. ██ The police had the right to stop defendants for the purpose of investigation and to interrogate them. The right to investigate gives rise to the right to conduct a reasonable search for weapons in order to protect the safety of the officers. (*People* v. *Mickelson*, 59 Cal.2d 448, 450 [30 Cal.Rptr. 18, 380 P.2d 658]; *People* v. *Martines*, 228 Cal.App.2d 245, 247 [39 Cal.Rptr. 526]; *People* v. *Garrett*, 238 Cal.App.2d 324, 327 [47 Cal.Rptr. 731].) The fact that the search extended beyond the person of the defendants to the automobile in which they were riding and to that portion where the officers saw one of them lean over and appear to place something under the seat, does not make the search illegal. The officer was not making an exploratory search of the vehicle. He was acting within reason and the search was no more than a step to safeguard the lives of the officers.

Finally, appellants argue that the court erred in failing to give a cautionary instruction on oral admissions because the officer testified that after arrest defendants told him they had just come from drinking beer in Lomita while their entire alibi was built around being in a bar in Gardena.

██ The robbery occurred in Downey; Bohannan testified that at the time of the robbery Wigginton, he and his employer were at a Donut shop, then at a bar in Gardena. On rebuttal, Officer LoBuglio was asked, ''Officer, at the time you arrested defendant Bohannan did you ask him where he was coming from and did he say, 'We were drinking beer in Lomita'? A. I did—he did.'' It does not appear that Bohannan's statement to LoBuglio was either a confession or an admission but a declaration of the place from where they were coming that night. Under the circumstances, the trial judge very properly did not instruct the jury on oral admissions or confessions. (Instruction No. 29-D, CALJIC.)

The judgents are affirmed.

Wood, P. J., and Fourt, J., concurred.