[Crim. No. 6457. First Dist., Div. Three. Sept. 17 1968.]

THE PEOPLE, Plaintiff and Respondent, v. ALEXANDER W. RUIZ, Defendant and Appellant.

Alfred L. Pepin, under appointment by Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, John T. Murphy and Michael Buzzell, Deputy Attorneys General, for Plaintiff and Respondent.

BROWN (H. C.), J.—Defendant was tried before a jury and convicted of burglary in the second degree (violation of Pen. Code, § 459). He contends on appeal (1) that the evidence used against him was obtained by an illegal search and seizure; (2) that the trial court erred in failing to instruct on an essential element of his defense regarding intoxication, which could negate intent, and (3) that there were errors in other instructions on the subject of intent.

The Facts: On October 31, 1966, Paul Findlay was employed at his mother's establishment, the "Red Barn Beer Parlor" in Half Moon Bay. At 2 a.m. Findlay closed the bar, secured the premises and left for home. In the cash register at this time was approximately $100 in currency and coins. Beside the cash register was a receptacle containing red-marked half dollars for use by the proprietors in the juke box. The six vending machines in the Red Barn were in good repair.

Two and one-half hours after Findlay had closed and locked the Red Barn (about 4:30 a.m.), Police Officers Scott Webb and Donald Olean, San Francisco police officers, were on a routine patrol in their radio car driving by the corner of Fair and Mission Streets. It was still dark when they saw a person whom Officer Webb recognized as Robert Anderson standing on the sidewalk. Webb, the driver of the radio car, drove a short distance and parked the vehicle in a position from which the officers could observe Anderson. After a short while Anderson started to walk south on Mission Street. Webb activated his car and drove past Anderson to Virginia Street where he turned left. Webb then proceeded to Coleridge Street where he parked the car just before Fair Street.

At that time the officers noticed two men whom Webb later recognized as Alexander Ruiz and John Shuler. (John Shuler was a codefendant, but he is not a party to this appeal.) The officers observed that Ruiz and Shuler ''just mingled around'' and that they had a flashlight. Ruiz appeared to be signalling with the flashlight and both Ruiz and Shuler were calling ''Bob.'' After a short while Webb saw Robert Anderson approaching. Anderson, apparently upon seeing the police officer, reversed his direction and walked briskly away. Webb then saw Ruiz and Shuler walk away and proceed down Peters Street. The slam of a car door followed.

Webb and Olean returned to the police car, drove down Fair Street, and turned into Peters Street. Parked on Peters Street the officers saw a 1960 station wagon. They parked directly behind the vehicle and turned the spotlight on the wagon's occupants, whom the officers immediately recognized as Ruiz and Shuler. The officers also recognized the station wagon as belonging to Robert Anderson.

From their vantage point behind the station wagon the officers could see a closed, large white bag in the rear deck of the vehicle. Webb got out of the patrol car and approached the station wagon, pointing his flashlight toward the bag. Although Webb could not determine the contents of the bag, it looked as if it contained a number of small packages, possibly cigarettes, and looked suspicious. At this point in time the officers did not have any knowledge that a theft had been recently perpetrated in the area.

Officer Webb then opened the door of the station wagon intending to question the occupants. He noticed on the floorboard of the front seat near the legs of Shuler a white cloth bag resembling a money bag. The bag was not completely covered and silver and currency were visible to Webb. Officer Webb then ordered Ruiz and Shuler out of the station wagon and into the radio car. He then searched the station wagon. The search revealed that the large sack contained 273 packages of assorted brands of cigarettes, a rubber mallet, a lug wrench, a screwdriver, pliers, Polish sausage and beef jerky. The money bag contained currency and red-painted half dollars. As previously noted, neither officer had knowledge that the Red Barn tavern had been burglarized, and Ruiz and Shuler were placed under arrest for suspicion of possessing stolen property. The charge was later changed to burglary upon subsequent discovery that the goods had been stolen from the Red Barn beer parlor.

Ruiz and Shuler were not interrogated, and they volunteered no information.

After Ruiz and Shuler were in custody, the police learned of the burglary of the Red Barn tavern. They were informed that John Tolly, a bartender at the Red Barn, arrived for work on October 31, 1966, at approximately 11:50 a.m. After Tolly had unlocked the door and stepped in, he noticed that the juke box's coin container had been torn away and that the container was hanging by its cord. The pinball machine, bowling machine, cigarette machine, pistachio nut machine, and pool machine were all in a damaged condition. The coin boxes had been ripped out with a lever and the boxes, together with pistachio nuts, were lying about the floor. The door of the cigarette machine was ajar and only three or four packs of cigarettes remained in the machine. The receptacle containing the red-marked half dollars was missing. The door to the back entrance was partially open. The bars covering the men's room window had been removed. The molding and part of the wall had also been removed.

At appellant's trial the red-marked half dollars were positively identified as the coins taken from the Red Barn. The jerky and sausage were shown to be of the type kept at the Red Barn, as was the sack discovered between the codefendant's feet. the flashlight used by appellant was also of the type which had been kept at the side of the cash register. Other significant evidence adduced at trial was testimony that appellant's fingerprints had been found at the Red Barn on the coin box of the wall unit of the juke box, which coin box was not ordinarily exposed to persons legitimately on the premises.

Appellant took the stand in his own defense and denied the burglary. He testified that he and his companions were intoxicated. He did not explain the presence of his fingerprints on the coin box of the juke box, nor did he explain how he came in possession of the proceeds of the burglary. In rebuttal, Officer Webb testified that appellant appeared to be normal and sober at the time of his arrest. Appellant did not request an instruction on the subject of intoxication and none was given by the trial court.

Appellant Ruiz first argues that the police officers did not have probable cause to search the vehicle, and therefore their motion to suppress, made before the trial court on the basis that the search of the vehicle was illegal, should have been granted.

In California the courts " . . . have consistently held that circumstances short of probable cause to make an arrest may still justify an officer's stopping pedestrians or motorists on the streets for questioning. If the circumstances warrant it, he may in self-protection request a suspect to alight from an automobile or to submit to a superficial search for concealed weapons. Should the investigation then reveal probable cause to make an arrest, the officer may arrest the suspect and conduct a reasonable incidental search." (*People* v. *Mickelson,* 59 Cal.2d 448, 450-451 [30 Cal.Rptr. 18, 380 P.2d 658]; cf. *Terry* v. *Ohio,* 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868]; *Sibron* v. *New York,* 392 U.S. 40 [20 L.Ed.2d 917, 88 S.Ct. 1889].) It is also recognized that a search and seizure without a warrant constitutes a prima facie cause of illegality. There is no exact formula for determining reasonableness. Reasonable cause is such state of facts as would lead an officer of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that a person is guilty of a crime. (See *People* v. *Ellsworth,* 190 Cal.App.2d 844, 846 [12 Cal.Rptr. 433]; *People* v. *Gibson,* 220 Cal.App.2d 15, 20-21 [33 Cal.Rptr. 775]; *People* v. *Davis,* 260 Cal.App.2d 186 [67 Cal.Rptr. 54]; *Wilson* v. *Porter* (9th Cir. 1966), 361 F.2d p. 412; *People* v. *Hanamoto,* 234 Cal.App.2d 6 [44 Cal.Rptr. 153]; *People* v. *Brice,* 234 Cal.App.2d 258 [44 Cal.Rptr. 231]; *People* v. *Cerda,* 254 Cal.App.2d 16, 22-24 [61 Cal.Rptr. 784]; *People* v. *Wigginton,* 254 Cal.App.2d 321 [62 Cal.Rptr. 104]; 55 Cal.L.Rev. 1160-1163.)

Whether a search and seizure is unreasonable depends upon the facts and circumstances of each case. (*People* v. *Webb,* 66 Cal.2d 107, 115 [56 Cal.Rptr. 902, 424 P.2d 342, 19 A.L.R.3d 708].) With respect to automobiles, as here, it is not always practicable or possible to obtain a warrant. The vehicle can be moved out of the locality and the contents may be hidden or destroyed. The courts desire to deter illicit police practices by prohibiting illegal searches but have not prescribed such rigid rules as to make all persons, no matter what their conduct, immune from police investigation.

Here Officers Webb and Olean had urgent reasons for detaining appellant, and there were exceptional circumstances justifying the search. The officers believed the station wagon contained articles which had come into the possession of Ruiz and Shuler illegally and which could be disposed of unless preventive measures were taken. The suspicions of the

officers were aroused by the actions of Ruiz, Shuler and Anderson in the early hours of the morning, such as: the "get away" by Anderson, the signalling with the flashlight, and the calling (presumably to Anderson) by Ruiz or Shuler. Their actions and unusual behavior demanded that Officers Webb and Olean stop Ruiz and Shuler for the purpose of investigation. After Officers Webb and Olean came to the station wagon, their observations of a bag containing money and a bag containing numerous packages compel the conclusion that the officers had reasonable cause to place Ruiz and Shuler in the police radio car and which we conclude, under the facts of this case, constituted an arrest. (But compare *People* v. *Gibson, supra,* 220 Cal.App.2d 15, 21, regarding placing suspect in police car considered to be an arrest.) The search of the car conducted after the arrest was proper as incidental to the arrest. (*People* v. *Davis, supra,* 260 Cal. App.2d 186; *People* v. *Sackett,* 260 Cal.App.2d 307 [67 Cal.Rptr. 157]; *Wilson* v. *Porter, supra* (9th Cir. 1966) 361 F.2d p. 412; *People* v. *Hanamoto, supra,* 234 Cal.App.2d 6; *People* v. *Brice, supra,* 234 Cal.App.2d 258; *People* v. *Cerda, supra,* 254 Cal.App.2d 16; *People* v. *Wigginton, supra,* 254 Cal.App.2d 321, but compare *People* v. *Mickelson, supra,* 59 Cal.2d 448; *People* v. *Gibson, supra,* 220 Cal.App.2d 15; *People* v. *Simon,* 45 Cal.2d 645 [290 P.2d 531]; *People* v. *Brown* 45 Cal.2d 640 [290 P.2d 528].)

 Ruiz further contends that the court failed to instruct on the question of intoxication. Ruiz claimed he was intoxicated. As Ruiz was charged with a crime requiring specific intent (burglary), intoxication would have been available as a defense to the charge insofar as it might have precluded appellant from forming the necessary intent. Penal Code section 22 states the following: "No act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition. But whenever the actual existence of any particular purpose, motive, or intent is a necessary element to constitute any particular species or degree of crime, the jury may take into consideration the fact that the accused was intoxicated at the time, in determining the purpose, motive, or intent with which he committed the act." (See also *People* v. *Phelan,* 93 Cal. 111 [28 P. 855]; *People* v. *Webb,* 25 Cal.App.2d 130 [77 P.2d 231].)

In *People* v. *Carmen,* 36 Cal.2d 768, 773 [228 P.2d 281], the court said: " 'It is elementary that the court should instruct

the jury upon every material question upon which there is any evidence deserving of any consideration whatever. [Citations.] The fact that the evidence may not be of a character to inspire belief does not authorize the refusal of an instruction based thereon. [Citations.] That is a question within the exclusive province of the jury. However incredible the testimony of a defendant may be he is entitled to an instruction based upon the hypothesis that it is entirely true.' ''

Here, however, the testimony regarding intoxication was minimal and consisted solely of Ruiz' self-serving assertions. Both officers had full opportunity to observe the appellant. Webb testified that he was within one foot of Ruiz and could not detect the odor of alcohol and that there was no manifestation by Ruiz that he was under the influence of alcohol. ■ It is settled that a nonexpert witness may give his opinion as to the intoxication or sobriety of a defendant. (*People* v. *Spencer,* 60 Cal.2d 64, 88 [31 Cal.Rptr. 782, 383 P.2d 134].)

■ Ruiz' testimony that he had been drinking was inconsistent with the other facts. It could be concluded that the manner of entry into the Red Barn tavern required some degree of judgment, if not skill. Also, a degree of selectivity was exercised in the articles taken from the tavern not normally present in a mind befogged by alcohol. They took money and other articles that either would be easily sold or could be used by themselves. Also, when Ruiz testified on his own behalf, he professed to remember in detail the occurrences of the morning of October 31 and of his actions. These facts would probably not justify the court in refusing to give a *requested* instruction on intoxication, as they merely create a conflict with the testimony of Ruiz. All of these facts, however, do justify a court's conclusion not to give such an instruction *sua sponte.*

Ruiz at trial did not request an instruction on intoxication. ■ The court has the duty of giving on its own motion instructions on general principles of law pertinent to the case. However, there is no duty to give instructions on specific points developed during trial unless requested. (See *People* v. *Jackson,* 59 Cal.2d 375, 380 [29 Cal.Rptr. 505, 379 P.2d 937].) ■ The failure to give an instruction on intoxication *on its own motion* where the evidence was so meager, and the contrary evidence so strong, was not an abuse of discretion or error by the trial court. (See also *People* v. *Conley,* 64 Cal.2d 310 [49 Cal.Rptr. 815, 411 P.2d 911]; *People* v. *Coyne,* 92 Cal.App.2d 413, 416, 417 [206 P.2d 1099].)

 Ruiz' next contention of error is that the court's instructions relative to intent were confusing and erroneous.

The trial judge gave the following instruction: ". . . [T]he doing of the act in and of itself is punishable as a crime. The intent with which the crime is committed is immaterial to guilt. It is no excuse to such a crime that the accused not know that such act was a crime or that he was mistaken as to the law.

"The specific intent with which an act is done may be manifested by the circumstances surrounding its commission. But you may not find the defendants guilty unless the proved circumstances not only are consistent with the hypothesis that he had the specific intent to commit burglary but are irreconcilable with any other rational conclusion."

Since appellant was charged with a violation of Penal Code section 459 (burglary), a crime requiring specific intent, the court erred in giving the instruction relative to general intent. However, in view of all the circumstances and the overwhelming evidence pointing to Ruiz and Shuler as the persons who burglarized the tavern, it is concluded that it is inconceivable that Ruiz was prejudiced by the unnecessary general intent instruction. (See Cal. Const., art VI, § 13 (formerly § 4½); *People* v. *Watson,* 46 Cal.2d 818 [299 P.2d 243]; *People* v. *Plummer,* 12 Cal. 256; 20 Stan. L.Rev., *Harmless Constitutional Error,* p. 83.)

In summary, it is therefore determined that the actions of Ruiz and his companions on the early morning of October 31, the discovery of a bag containing money and the other bag containing merchandise of a suspicious nature, justified the arrest and search of the station wagon in which appellant was seated. Further, the trial court was not required to nor did it abuse its discretion in not giving *sua sponte* an instruction on intoxication. In considering the entire record and all of the instructions, there is no reasonable probability that the jury could have reached any verdict other than guilty if the instruction on intoxication had been given or if the general instructions on intent had been omitted.

The judgment is affirmed.

Draper, P. J., and Salsman, J., concurred.