[Crim. No. 3249.    Fourth Dist., Div. One.    Apr. 1, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. LARRY WILLIAM FRY, Defendant and Appellant.

Frederic G. Dunn, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Elizabeth Miller and John C. Hamilton, Deputy Attorneys General, for Plaintiff and Respondent.

COUGHLIN, J.—Defendant was charged with the offenses of burglary and receiving stolen property in a seven-count information; also was charged with a prior felony conviction in the State of Texas; entered pleas of not guilty to the offenses charged; denied the prior felony conviction; moved to suppress evidence under Penal Code section 1538.5, which was denied; withdrew his former pleas and denial; entered pleas of guilty to one count of burglary and one count of receiving stolen property, and admitted the prior conviction, whereupon the other counts were dismissed; was denied probation; was sentenced to imprisonment in the state prison; and appeals.

We conclude the judgment must be reversed because the court erred in denying defendant's motion to suppress with respect to a part of the evidence to which that motion was directed.

Defendant contends the motion to suppress should have been granted in toto because the evidence to which it was directed was the product of: (1) an unlawful detention; (2)

an unlawful arrest; (3) an unlawful search of his house; and (4) an unlawful seizure of property observed in his house.

On October 27, 1967, at about 4:30 a.m., a police officer in an automobile parked on Colorado Avenue in the City of Chula Vista was engaged in a stakeout of a neighborhood where recent burglaries had occurred; saw an automobile back out from a residence onto Colorado Avenue about 1,000 feet south of the police unit; and observed defendant walk toward him from that area. About an hour before, the officer had heard of a burglary at a place approximately 2 miles south of his location; and about 30 minutes thereafter had seen police units respond to a complaint of the sound of someone attempting to enter a residence and conduct a search in connection therewith on Colorado Avenue about 1,000 feet away. When first seen, defendant was across the street from the place where this search had been conducted. As defendant approached the police automobile he walked hurriedly and looked back, to his right and to his left. The officer was prone on the front seat of the car but was able to see defendant who, as he approached the police unit, lessened his gait; stopped when parallel to the right rear fender of the car; turned around; came to within a few feet of the right front door; and leaned over, as though looking inside the car, almost touching the glass with his face. Thereupon the officer opened the door; identified himself; and asked defendant what he was doing. In response, defendant said he was out for a walk. When asked why he was walking in Chula Vista he said he had gone to Tijuana, Mexico with a friend in the latter's car and his friend had left him. He was unable to identify the friend, the latter's address, or the type of his car. When asked where he lived, defendant said in San Diego; and when asked for identification he produced a crumpled Xerox copy of a Navy discharge form and of a Texas driver's license. The officer noticed an oblong bulge in defendant's left front Levi pocket which he believed was made by a large knife, or some other type of weapon. He asked defendant "what he had in his pocket." Defendant replied "it was a knife." Thereupon defendant voluntarily removed a 4-inch folding blade knife from that pocket. Simultaneously defendant removed from his right front pocket a watch, across the face of which were the words "Steve Brown," and a "key keeper" containing three keys and nine rings, one of which had a pearl setting and some of the others had stone settings. Thereafter defendant was taken to the police station for further identification.

354

■ The issue at hand is whether the foregoing facts support the conclusion there was reasonable cause to stop defendant, interrogate him and, upon observing the contents of his pockets, arrest him.

The information possessed by the officer furnished probable cause for stopping defendant and interrogating him. (*People* v. *Schader,* 62 Cal.2d 716, 722 [44 Cal.Rptr. 193, 401 P.2d 665]; *People* v. *Heard,* 266 Cal.App.2d 747, 750-751 [72 Cal. Rptr. 374]; *People* v. *Cruppi,* 265 Cal.App.2d 9, 11 [71 Cal.Rpr. 42]; *People* v. *Hawxhurst,* 264 Cal.App.2d 398, 401 [70 Cal.Rptr. 253]; *People* v. *Davis,* 260 Cal.App.2d 186, 188 [67 Cal.Rptr. 54]; *People* v. *Rogers,* 241 Cal.App.2d 384, 387 [50 Cal.Rptr. 559]; *People* v. *McGlory,* 226 Cal.App.2d 762, 765 [38 Cal.Rptr. 373].)

The evidence supports the alternate conclusions defendant either voluntarily produced the knife when asked what was in his pocket or produced it in response to the officer's direction to remove what was in his pocket. In either event the action of the officer was proper. He was authorized to pat down defendant for weapons. (*People* v. *Mickelson,* 59 Cal.2d 448, 450-451 [30 Cal.Rptr. 18, 380 P.2d 658]; *People* v. *Hawxhurst, supra,* 264 Cal.App.2d 398, 401.) Such a cursory examination would have revealed the object in defendant's pocket was a knife, which was the belief entertained by the officer upon his observation of the nature of the bulge in the pocket. ■ When an officer has reasonable cause to believe a person subject to investigation is in possession of a weapon he has a right to direct the person to deliver the weapon to him.

■ In any event, the significant circumstance was defendant's voluntary removal from his right pocket of nine rings and a watch bearing the name of a person other than defendant. Any request for removal of property from defendant's clothing was directed to the contents of his left pocket to which the officer's attention had been directed by the bulge. Defendant's voluntary removal of the articles from his right pocket was not the product of unlawful official conduct (*People* v. *McGlory, supra,* 226 Cal.App.2d 762, 764; *People* v. *Walker,* 203 Cal.App.2d 552, 555-557 [21 Cal.Rptr. 692]); and, observing them in his hand did not constitute a search. (*People* v. *Schader, supra,* 62 Cal.2d 716, 725; *People* v. *Walker, supra,* 203 Cal.App.2d 552, 556.) At the time the officer observed the rings and watch in defendant's possession he knew two burglaries had been committed in the area on the night in question; defendant approached the police automo-

bile from the immediate area of one of these burglaries; defendant had offered a suspicious and ridiculous excuse for being in the area; and the only evidence of identity he possessed was a Xerox copy of a Navy discharge form and of a Texas driver's license. The foregoing furnished probable cause to believe the rings and watch in defendant's possession were stolen property which defendant either had stolen or unlawfully possessed. An officer may make an arrest without a warrant whenever ''he has reasonable cause to believe that the person to be arrested has committed a felony, whether or not a felony has in fact been committed.'' (Pen. Code, § 836, subd. 3.) The fact the officer did not have information the articles in possession of defendant had been stolen does not dictate the conclusion he did not have probable cause to believe they were the subject of a felonious offense committed by defendant. (*People* v. *Ruiz*, 265 Cal.App.2d 766, 769 [71 Cal.Rptr. 519]; *People* v. *Schellin*, 227 Cal.App.2d 245, 251 [38 Cal. Rptr. 593]; see also *People* v. *Jennings*, 231 Cal.App.2d 744 [42 Cal.Rptr. 332]; *People* v. *Loomis*, 231 Cal.App.2d 594, 598 [42 Cal.Rptr. 124].)

The evidence supports the conclusions the officer had probable cause to arrest defendant for the commission of a felony at the time he placed defendant in the automobile; taking defendant to the police station either for further investigation or in custody pursuant to an arrest was legal; and the further search of defendant following his arrest was authorized as an incident to the arrest. (*People* v. *Schader, supra,* 62 Cal.2d 716, 722-726; *People* v. *Ruiz, supra,* 265 Cal.App.2d 766, 771, 774; *People* v. *Davis, supra,* 260 Cal.App.2d 186, 189; *People* v. *Shaw,* 237 Cal.App.2d 606, 621 [47 Cal.Rptr. 96].)

At 4:30 o'clock on the afternoon of the same day, i.e., October 27, 1967, two police officers, Alexander and Gregory, visited defendant's home while he was in custody; contacted defendant's wife who was at the home; identified themselves; and asked if they might come in and talk to her. She consented. The officers entered; told Mrs. Fry her husband was in jail; observed in plain sight a pair of bolt cutters such as might be used in effecting a burglarous entry, a citizen's band radio, a ''transceiver,'' a binoculars case, a record player and a tape recorder; asked if they might look around; were given permission to do so; but before undertaking a search, advised Mrs. Fry of her constitutional rights; asked her to sign a form giving her consent to a search; and were advised she would not sign because her husband had told her not to let

anybody search the house and not to let anybody into the house. Upon Mrs. Fry's refusal to execute the written consent, the officers left. Thereafter they contacted and conversed with the defendant's father whom they knew had been contacted by a deputy sheriff earlier that morning when he, the father, was sitting in a parked car in which a deputy sheriff saw a pair of bolt cutters and a citizen's band radio. The father admitted having the bolt cutters; stated he had left them in his son's home; denied any knowledge of a citizen's band radio; and then did not have it in his automobile. The officers arrested the father for burglary.

At 7 p.m. Officer Gregory accompanied by a third officer, Leonard, again contacted Mrs. Fry, who was at the father's home; told her they had arrested the father and of their conversation with him; and asked her to return with them to her home. She told the officers the father had placed the bolt cutters and the citizen's band radio in her home that afternoon. The officers told her they wished to impound these items. She agreed; permitted the officers to come into the home; and allowed them to seize and impound the articles in question plus a "transceiver," the case containing binoculars, the record player and the tape recorder. There is no evidence any of the officers had any information the latter three articles had been stolen.

Entry into the home on the first occasion was with permission of the occupant, defendant's wife, who the officers were entitled to believe had authority to admit them; preceded her assertion defendant had told her not to permit anyone to enter or to search the house; and was not illegal. (*In re Lessard,* 62 Cal.2d 497, 504 [42 Cal.Rptr. 583, 399 P.2d 39]; *People* v. *Carter,* 48 Cal.2d 737, 746 [312 P.2d 665]; *People* v. *Brown,* 238 Cal.App.2d 924, 926-927 [48 Cal.Rptr. 204].) The evidence obtained from observing what then was in plain sight was not the product of a search; was not obtained unlawfully; and was not subject to suppression. (*People* v. *Roberts,* 47 Cal.2d 374, 379 [303 P.2d 721]; *Paper* v. *United States,* 53 F.2d 184, 185.)

Entry into the house on the second occasion with incident seizure of property theretofore observed was not justified on the ground the wife consented. The property was seized under the concept it was in possession of defendant and his possession was evidence he had committed burglary. Defendant did not consent to the entry, the search to ascertain whether the property theretofore observed still was in the

house, or to its seizure. To the contrary, his refusal to reveal his home address to the officers and his instruction to his wife not to permit anyone to enter or search the house unequivocally demonstrated he did not consent to the entry, a search, or a seizure. When the officers solicited consent of the wife to enter for the purpose of seizing property they knew her husband had instructed her not to consent and, under these circumstances, were not entitled to rely upon her consent as justification for their conduct. This conclusion is dictated by the principles stated and applied in *People* v. *Faris,* 63 Cal.2d 541, 545 [47 Cal.Rptr. 370, 407 P.2d 282], *In re Lessard, supra,* 62 Cal.2d 497, 505, *People* v. *Haven,* 59 Cal.2d 713, 720 [31 Cal.Rptr. 47, 381 P.2d 927], *People* v. *Carter,* 48 Cal.2d 737, 745 [312 P.2d 665], and *People* v. *Roberts,* 47 Cal.2d 374, 377 [303 P.2d 721]. ■ The officers might have obtained a search warrant based on what they had seen on the occasion of their first entry. (*People* v. *Roberts, supra,* 47 Cal.2d 374.) The seizure without a warrant may not be justified on the ground the information possessed by the officers, as appears from the evidence presented at the hearing on the motion to suppress, would have supported issuance of a search warrant, because the constitutional guarantee requires a judicial determination of the sufficiency of the information possessed by the officers to support a seizure before the seizure occurs. (*People* v. *Haven, supra,* 59 Cal.2d 713, 720; *People* v. *Tarantino,* 45 Cal.2d 590, 594 [290 P.2d 505].) ■ On the occasion of their second entry the officers knew the wife had no authority to consent to their entry, search or seizure. Under these circumstances their entry without a warrant was that ''unreasonable activity on the part of law enforcement officers'' which the exclusionary rule intends to discourage. (*People* v. *Gorg,* 45 Cal.2d 776, 783 [291 P.2d 469].)

This is not a case in which officers entered lawfully; saw contraband in plain sight; and simultaneously seized it. (Cf. *People* v. *Kampmann,* 258 Cal.App.2d 529, 532 [65 Cal.Rptr. 798].) In the case at bench the officers saw evidence supporting the charge defendant and his father had committed burglary; also saw other property about which they had no information but which subsequently was identified as stolen; left the house; and thereafter returned and entered without valid consent. On the second occasion the officers did not know whether the property they theretofore had seen still was in the house. Consequently their entry was for the twofold purpose of searching and of seizing.

358 ▪

▪ In light of the fact evidence obtained by searching defendant's person, seizing property disclosed by this search, and observing the bolt cutters, citizen's band radio, "transceiver," binoculars case, record player and tape recorder in his house is not subject to suppression, whereas the evidence obtained by seizing the latter articles is subject to suppression, the question on appeal at this juncture is whether the error of the trial court in denying the motion to suppress with respect to the property seized from defendant's house requires a reversal of the judgment entered upon his pleas of guilty.

▪ Where a defendant appeals from a judgment on a plea of guilty following denial of a motion to suppress evidence material to the charge against him and the appellate court determines denial of his motion was error, the judgment will be reversed with instructions to set aside the plea upon which it was entered. (Cf. *People* v. *Rose,* 267 Cal.App.2d 648 [73 Cal.Rptr. 349].) The posture of the case under such circumstances eliminates the requirement a defendant on appeal must establish the error of which he complains was prejudicial because it is impossible to apply the test of prejudice, i.e., the probability of the outcome if the motion had been granted. (See *People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243].) The probability of the outcome of a trial cannot be determined absent the evidence upon which the probability of that outcome is predicated.

▪ In the case at bench the binoculars in the binoculars case seized by the officers were identified as a part of the loot taken in the burglary to which defendant pled guilty. The bolt cutters, citizen's band radio and "transceiver," with appropriate background, would be proof defendant and his father were equipped to make burglarous entries and maintain an effective lookout. Such proof would be pertinent to a determination of the issues in both the count charging the burglary and the count charging possession of stolen property to which defendant entered pleas of guilty. The relative effect of evidence of the observation of the officers respecting the articles they seized and of the articles themselves, and the effect of the latter upon the credibility of the former are matters determinable only in light of all of the evidence that might be introduced upon a trial of the case.

A defendant under circumstances such as those in the case at bench should be permitted to enter his plea unencumbered by an erroneous denial of his motion to suppress. Whether he

may require the prosecution to prove his guilt or relieve it of that burden by a judicial admission of guilt is a determination he should be permitted to make in light of a final appellate ruling that the order denying his motion to suppress was error in whole or in part.

It is a common practice pleas of guilty are entered as to some counts in a multiple count information with the understanding other counts will be dismissed. Where pleas of guilty are entered under these circumstances and they are set aside on appeal, the prosecution should be permitted to effect a reinstatement of the dismissed counts. In the instant case, in the event the prosecution moves to set aside the dismissals of the five counts in the information to which defendant did not enter pleas of guilty, upon the ground they were dismissed because he had entered pleas of guilty to the two counts, and the court finds accordingly, the dismissals should be set aside.

In light of further proceedings in the trial court, we take note of an apparent misunderstanding respecting defendant's eligibility for probation. Defense counsel advised the court on two different occasions, respectively: "I don't believe he [defendant] is eligible for probation, your Honor"; and ". . . I don't believe probation is possible in this particular matter." The probation officer's report showed defendant had been convicted in Texas of theft of over $50 for which he was imprisoned in the state prison, and later was convicted of the offense of receiving stolen property for which he again was imprisoned in the state prison. Defense counsel apparently assumed both of the foregoing convictions were for offenses which would have been felonies in the State of California, invoking the provision of Penal Code section 1203, foreclosing probation except upon a finding of unusual circumstances and consent of the district attorney. The theft offense was not a felony in this state. (*People* v. *Curtis,* 70 Cal.2d 347, 359 [74 Cal.Rptr. 713, 450 P.2d 33].)

The judgment is reversed with instructions to the trial court to set aside defendant's pleas of guilty and his admission of a prior conviction, and to proceed in harmony with the views expressed in this opinion and the law and the facts in the premises.

Brown (Gerald), P. J., and Whelan, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied May 28, 1969. Mosk, J., and Burke, J., were of the opinion that the petition should be granted.